COX ENTERPRISES, INC. d/b/a the
Austin American-Statesman,
Petitioner,

v.

BOARD OF TRUSTEES OF the AUSTIN
INDEPENDENT SCHOOL
DISTRICT, Respondent.

No. C–3586.

Supreme Court of Texas.

April 9, 1986.

David H. Donaldson, Jr., Graves, Dougherty, Hearon & Moody, Austin, for petitioner.

S. Jack Balagia, Jr., McGinnis, Lochridge & Kilgore, Austin, for respondent.

CAMPBELL, Justice.

This is a declaratory judgment action under the Texas Open Meetings Act, Tex. Rev.Civ.Stat.Ann. art. 6252–17.[1]  Cox En-

terprises, Inc., doing business as the *Austin American-Statesman* newspaper, sought declaratory, injunctive, and mandamus relief against the Board of Trustees of the Austin Independent School District, alleging that the Board was violating the Open Meetings Act.  The trial court rendered a declaratory judgment that the Board had violated various provisions of the Act.  The court of appeals reformed the trial court's judgment and affirmed the judgment as reformed.  679 S.W.2d 86 (Tex.App. 6 Dist.1984).  We hold that the Board violated the Open Meetings Act by providing inadequate notice of its executive sessions and by improperly convening its executive sessions without a quorum present.  Accordingly, we reverse in part and affirm in part the judgment of the court of appeals.

The newspaper contends that the school district, by posting an agenda listing only general terms such as "personnel," "litigation," and "real estate matters," failed to give adequate notice of its executive sessions.  The newspaper also contends that the Board failed to comply with the Act in convening various executive sessions and violated the Act's prohibition against taking final action on any matter in a closed session.

The Board met twice each month in the Carruth Administration Building, and special meetings were scheduled as necessary. For each regular meeting, the president of the Board and the school superintendent prepared an agenda.  An outline of the agenda was posted one week before the scheduled Board meeting.  The posted outline was intended to provide the required notice for the meeting.  The posted notices typically included as an agenda item an "executive session," which is a meeting or part of a meeting closed to the public.  The notices listed as the subjects of these closed sessions such generalized topics as "Personnel," "Litigation," "Consultation," and "Real Estate Matters."

1. All sections cited herein refer to the Texas Open Meetings Act, Tex.Rev.Civ.Stat.Ann. art. 6252–17 (Vernon Supp.1985).

The Board members usually assembled in the superintendent's office, which is down the hall from the auditorium where the public gathers for the Board's meetings. When an executive session was scheduled, the Board president or the next ranking officer, sometimes accompanied by one or two Board members, would go to the auditorium. The president would convene the meeting and announce that the Board was going into executive session. The executive sessions were held in the superintendent's office. The public was excluded from these sessions. After the closed sessions, the Board would return to the auditorium and conduct the open meeting.

The Texas Open Meetings Act requires every regular, special, or called meeting of a governmental body to be open to the public, with certain narrowly-drawn exceptions. *See* Tex.Rev.Civ.Stat.Ann. art. 6252–17 § 2(a), and the exceptions set out in § 2(e), (f), (g), (h), (j), (m), (n), (o), and (p). The Act's exceptions, however, do not extend to any "final action, decision, or vote." *Id.* at § 2(*l*). The Act also requires advance notice for each meeting, and provides for civil and criminal enforcement. *Id.* at §§ 3, 3A, and 4.

Section 3A(a) requires advance written notice of the date, hour, place, and subject of each meeting in the manner prescribed by the Act. "Meeting" is broadly defined to cover almost any gathering of a quorum of a governmental body. Tex.Rev.Civ.Stat. Ann. art. 6252–17 § 1; *see also* § 4(b).

■ An executive session, even if properly convened and closed to the public under section 2's exceptions, falls within the definition of "meeting." Section 2(a) requires that each closed session and the applicable exception be announced in an open meeting for which notice has been given in compliance with section 3A. Section 3A requires advance notice of subject matter; thus it can be determined whether a governmental body is correctly applying the exceptions to section 2's general requirement of open meetings. The two provisions, taken together, further the Act's

intended purpose of opening governmental decision-making to the public.

■ This court has not fully addressed the extent of the notice required by section 3A(a), although on two previous occasions we found substantial compliance met the notice requirements. *See Texas Turnpike Authority v. City of Fort Worth,* 554 S.W.2d 675 (Tex.1977); *Lower Colorado River Authority v. City of San Marcos,* 523 S.W.2d 641 (Tex.1975). Those cases set out a rudimentary standard for assessing the adequacy of the subject matter description given. In *Lower Colorado River Authority,* the notice in issue provided that the Board would consider matters

> including the ratification of the prior action of the Board taken on October 19, 1972, in response to changes in electric power rates for electric power within the boundaries of the City of San Marcos, Texas.

523 S.W.2d at 646. We held this notice substantially complied with the Act because it "would alert a reader to the fact that some action would be considered with respect to the charges for electric power sold in San Marcos." *Id.* As long as a reader is alerted to the topic for consideration, it is not necessary to state all of the consequences which may flow from consideration of the topic. *Texas Turnpike Authority,* 554 S.W.2d at 676.

■ A 1977 Attorney General Opinion addressing the adequacy of notice for an executive session discussed the balance of interests served by the Open Meetings Act:

> The primary interest protected by section 2(g) permitting personnel matters to be discussed privately is that in avoiding possible unjustified harm to the reputation of the individual officer or employee under consideration. While this is an important interest, it cannot be permitted to completely eliminate the public's right to be notified with reasonable specificity of the subject matter to be considered at a meeting of a governmental body, particularly when the subject is one in which the public can reasonably be expected to

have a special interest, such as the appointment of the chief executive officers of a university system and a state university. While the public is not entitled to observe or participate in the Board's closed discussions of the qualifications of individuals under consideration for appointment to such a position, we believe that the public is entitled to reasonable notice that the Board will consider filling such positions at its meeting.... Thus, the legislature has decided that the governing body must inform the public of the fact of its action, even though it may deliberate in private.

Op.Tex.Att'y Gen. No. H–1045 (1977) (citations omitted). We find this reasoning persuasive. The Act's purposes cannot be circumvented by mere reference to one of the section 2 exceptions. The advance notice given under section 3A(a) should specifically disclose the subjects to be considered at the upcoming meeting.

■ The Board did not provide full and adequate notice, particularly where the subject slated for discussion was one of special interest to the public. Selection of a new school superintendent is not in the same category as ordinary personnel matters—and a label like "personnel" fails as a description of that subject.

■ Similarly, a major desegregation lawsuit which has occupied the Board's time for a number of years, and whose effect will be felt for years to come, is not in the same category as the more common "litigation" which a school board may expect to face. Certainly, a school board is not expected to disclose its litigation strategy, but it cannot totally conceal that a pending desegregation lawsuit will be discussed.

The newspaper also asserts that the Board violated the Act by convening meetings without a quorum present in the auditorium. The Board members would gather in the superintendent's office to await the arrival of a quorum. At some point, one or two members would go to the auditorium, convene the meeting, and announce an executive session.

The court of appeals held that under these circumstances, where the office was adjacent to the auditorium and open to the public, there was substantial compliance with the Act. 679 S.W.2d 86. The newspaper argues that the Act clearly contemplates that a quorum be present at the meeting place, that section 2(a) requires an open meeting to be convened before the Board may go into executive session, and that there is no "meeting" unless a quorum is present and physically able to "deliberate." Tex.Rev.Civ.Stat.Ann. art. 6252–17, §§ 1(a) and (b).

■ We agree with the newspaper. By all appearances, only two members may have been present. The public is entitled to know which members are present for the closed session and whether there is a quorum. We hold that the School Board failed to comply with the Act's requirements.

■ Finally, the newspaper argues that we should reinstate the trial court's findings that the Board violated section 2(*l*) of the Act by taking final action in closed session on three matters: (1) the sale of surplus school property, (2) the release of the names and qualifications of the candidates for superintendent, and (3) the final selection of a superintendent. The court of appeals reformed the trial court's judgment by holding that a "decision" to solicit bids on the sale of surplus school property and a "decision" to release names of the candidates for superintendent as required by law, were not "final actions" within the meaning of section 2(*l*). The court of appeals also held there was no evidence to support the finding that the final selection of a superintendent occurred in a closed session. We agree with the court of appeals and affirm this part of its judgment which declares that these actions of the Board of Trustees do not violate the Open Meetings Act.

■ We have held that general notice in certain cases is substantial compliance even though the notice is not as specific as it could be. *See Lower Colorado River Authority v. City of San Marcos*, 523

S.W.2d 641 (Tex.1975), and *Texas Turnpike Authority v. City of Fort Worth*, 554 S.W.2d 675 (Tex.1977). However, less than full disclosure is not substantial compliance. Our prior judgments should have served as notice to all public bodies that the Open Meetings Act requires a full disclosure of the subject matter of the meetings. The Act is intended to safeguard the public's interest in knowing the workings of its governmental bodies. A public body's willingness to comply with the Open Meetings Act should be such that the citizens of Texas will not be compelled to resort to the courts to assure that a public body has complied with its statutory duty.

We reverse the judgment of the court of appeals in part and declare that the Board violated the Open Meetings Act by providing inadequate notice of its executive sessions and by improperly convening its executive sessions without a quorum present. In all other respects, we affirm the judgment of the court of appeals.