OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

May 26, 1999

Ms. Kimberly K. Edwards                     Opinion No. JC-0053
Executive Director
Texas Public Finance Authority              Re:  Whether a bond pricing attended by less than
300 West 15th Street, Suite 411             a quorum of the Texas Public Finance Authority
P.O. Box 12906                              Board of Directors constitutes a meeting subject
Austin, Texas 78711-2047                    to the Open Meetings Act   (RQ-0016)

Dear Ms. Edwards:

You ask whether the meeting of a committee of less than a quorum of the Texas Public Finance Authority Board of Directors (the "Board") appointed by the Board to act on its behalf in selling bonds pursuant to article 717q of the Revised Civil Statutes is subject to the Open Meetings Act, TEX. GOV'T CODE ANN. ch. 551 (Vernon 1994 & Supp. 1999). If so, you ask whether meetings of such committees may be held outside the state. We conclude that a pricing committee appointed by the Board is a governmental body within the meaning of the Open Meetings Act and that its meetings are subject to the Act. This conclusion applies to pricing committees composed of staff or staff and board members; it is not limited to pricing committees composed of board members. We also conclude that because the Act requires a meeting of a governmental body to be held in a location accessible to the public, it precludes a pricing committee from meeting in an inaccessible location, such as the office of an underwriter in another state.

We begin with a brief review of the Texas Public Finance Authority (the "Authority") and the nature of the committees at issue in your request. The Authority, established and governed by the Texas Public Finance Authority Act, TEX. REV. CIV. STAT. ANN. art. 601d (Vernon Supp. 1999), is a "public authority and body politic and corporate," id. § 3, authorized to issue and sell bonds on its own behalf and on behalf of certain state agencies, see id. §§ 9-9D. It is governed by the Board, which is composed of six members appointed by the Governor with the advice and consent of the Senate. Id. § 4(a). A majority of the full membership of the Board constitutes a quorum. Id. § 6(b).

You inform us that the Authority is charged with issuing and selling general obligation and revenue bonds and other obligations and is an issuer under article 717q of the Revised Civil Statutes.

Section 3 of article 717q requires a governing body authorized to act on behalf of an issuer[1] to adopt an ordinance, order or resolution authorizing the sale of bonds and permits the governing body to designate one or more officers or employees to act on its behalf in selling bonds. *See id.* art. 717q, § 3. Section 3 provides in pertinent part:

> The issuance of obligations shall be authorized by resolution, order, or ordinance of the governing body of an issuer, which resolution, order, or ordinance shall fix the maximum amount of obligations to be issued or, if applicable, the maximum principal amount which may be outstanding at any time, the maximum term obligations issued and delivered pursuant to such authorization shall be outstanding, the maximum interest rate to be borne by the obligations, the manner of sale (which may be by either public or private sale), price, form, terms, conditions, and the covenants thereof. *The resolution,* order, or ordinance authorizing the issuance of obligations may provide for the designation of a paying agent and registrar for the obligations and *may authorize one or more designated officers or employees of the issuer to act on behalf of the issuer from time to time in the selling and delivering of obligations authorized and fixing the dates, price, interest rates, interest payment periods, and other procedures as may be specified in the resolution, order, or ordinance.* Obligations may be issued in such form or such denomination, payable at such time or times, in such amount or amounts or installments, at such place or places, in such form, under such terms, conditions, and details, in such manner, redeemable prior to maturity at any time or times, bearing no interest, or bearing interest at any rate or rates (either fixed, variable, floating, adjustable, or otherwise, all as determined in accordance with the resolution, order, or ordinance providing for the issuance of the obligations, which resolution, order, or ordinance may provide a formula, index, contract, or any other arrangement for the periodic determination of interest rates), not to exceed the maximum net effective interest rate allowed by law and may be signed or otherwise executed in such manner, with manual or facsimile signatures, and with or without a seal, all as shall be specified by the governing body of the issuer in the resolution, order, or ordinance authorizing the issuance of the obligations.

*Id.* (emphasis added).

---

[1]"Governing body" in article 717q means "the board, council, commission, commissioners court, or other designated body (acting either individually or jointly, when authorized by law) authorized by law to issue bonds for or on behalf of an issuer." TEX. REV. CIV. STAT. ANN. art. 717q, § 1(7) (Vernon Supp. 1999).

You explain that when the Board sells bonds pursuant to a negotiated sale (as opposed to a competitive sale, for which bids are opened in a public meeting), it appoints one or more of its officers or employees under the authority of section 3 "to serve as a pricing committee to negotiate the final terms and conditions of the bond sale within the parameters established in the bond resolution and [to] complete the sale by signing a bond purchase contract." Letter from Ms. Kimberly K. Edwards, Executive Director, Texas Public Finance Authority, to Honorable John Cornyn, Texas Attorney General 2 (Feb. 1, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. "[A]fter the Board has established the general parameters for the pricing and other terms and conditions of the bonds in the bond resolution, which it adopts in a public meeting, the exact, technical features of the bonds can be established through negotiations between the issuer and the underwriter to maximize investor demand on the day of pricing and thus lower interest rates." *Id.* You state that "[a]lthough the pricing committee exercises some discretion with respect to fixing the final terms of the sale, the discretion is limited to action within the provisions of the bond resolution" adopted by the Board. *Id.* at 3. You also inform us that typically the meetings of pricing committees occur on the premises of the underwriter's trading desk, often in New York City or other financial centers outside the state, *see id.* at 2, 6, and explain that the presence of a pricing committee at the underwriter's office "ensures meaningful negotiations, and guarantees that persons with the authority to act are available to respond to market conditions," *id.* at 6. We understand from the facts presented in your letter that after the Board establishes the parameters of the sale in the resolution and appoints the pricing committee, the pricing committee negotiates the sale and executes the bond purchase contract. No further action is taken by the Board.

With this background, we turn to your questions. Again, you ask whether the meeting of a pricing committee composed of two or more but less than a quorum of the Authority's Board appointed by the Board pursuant to a resolution under section 3 of article 717q is subject to the Open Meetings Act. If so, you ask whether meetings of pricing committees may be held outside the state.

Based on the facts you have provided, we conclude that a pricing committee appointed by the Board pursuant to section 3 of article 717q to negotiate and finalize a bond sale is itself a "governmental body" subject to the Act. For purposes of the Act, the term "governmental body" is defined to include "a board, commission, department, committee, or agency within the executive or legislative branch of state government that is directed by one or more elected or appointed members." TEX. GOV'T CODE ANN. § 551.001(3)(A) (Vernon 1994). In addition, the Act defines a "meeting" as "a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action." *Id.* § 551.001(4). Because the Act defines a meeting to involve discussion, consideration or final action on public business or public policy over which the governmental body has supervision or control, *see id.*, a governmental body must have the authority to supervise or control public business or policy in order to fall within the Act's scope. *See Gulf Regional Educ. Television Aff. v. University of Houston*, 746 S.W.2d 803, 809 (Tex. App.–Houston [14th Dist.] 1988, writ denied). For this reason, Attorneys General have concluded that bodies that

would otherwise fall within the definition of a state-level governmental body set forth in section 551.001(3)(A) that have merely advisory duties are not subject to the Act. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JM-331 (1985) (citizens advisory panel to state agency with no power to supervise or control public business not subject to the Act); H-994 (1977) (university committee that made recommendations to board of regents regarding selection of administrative officers not subject to the Act); Tex. Att'y Gen. LO-97-058, at 5-6 (Texas Funeral Service Commission complaint review committee not subject to Act when it meets informally with licensees to make recommendations to full Commission); LO-93-64 (student fee advisory committee at a public university that made recommendations for consideration by board of regents not subject to the Act).

As you describe the pricing committees, the committee members are appointed by the Board pursuant to a resolution under section 3 of article 717q and are authorized pursuant to the resolution to negotiate and commit to bond sale terms and to execute a bond purchase contract on behalf of the Board. Based on these facts, we believe a pricing committee is a "committee . . . within the executive . . . branch . . . that is directed by one or more . . . appointed members," TEX. GOV'T CODE ANN. § 551.001(3)(A) (Vernon 1994), members appointed by the Board pursuant to section 3 of article 717q. Given that pricing committee members are appointed by the Board pursuant to statutory authority, a pricing committee falls within this definition regardless of its composition, *i.e.*, whether it is composed of board members, staff, or a combination of the two. Furthermore, because a pricing committee is authorized to negotiate the terms of a bond sale and to execute a bond purchase contract without any further action by the Board, it has control over public business. Accordingly, we conclude that a pricing committee appointed by the Board pursuant to section 3 of article 717q is itself a governmental body within the Act's definition of the term. *See* Tex. Att'y Gen. LO-97-058, at 3-5 (Texas Funeral Service Commission complaint review committee consisting of two Commission members and others that was delegated authority to investigate complaints and supervise investigations exercised and controlled public business and was itself a governmental body subject to the Act when it reviewed investigations). Again, we stress that this conclusion is not limited to pricing committees composed of board members; it applies with equal force to pricing committees composed of staff or staff and board members. *See id.*

You urge us to conclude that a pricing committee is not subject to the Act because a "pricing committee acts only after the full Board has deliberated the material terms of the bond issue in an open meeting and adopted a resolution governing the sale" and because "the activities of the pricing committee must be carried out only upon and within the limits of the Board's delegation, which occurs in an open meeting. Although the pricing committee exercises some discretion with respect to fixing the final terms of the sale, the discretion is limited to action within the provisions of the bond resolution already adopted by the Board." Request Letter, *supra*, at 3. You also describe a pricing committee's duties as "technical and ministerial in carrying out the policy direction and decisions of the full Board as set out in the bond resolution." *Id.* at 5. Elsewhere in your letter, however, you state that a pricing committee's "ability to negotiate and renegotiate is extremely important to ensuring that the Authority is borrowing for the State at the lowest possible cost," *id.*, and that the presence of a pricing committee at the underwriter's office "ensures meaningful

negotiations, and guarantees that persons with the authority to act are available to respond to market conditions," *see id.* at 6, thus indicating that pricing committees exercise substantial authority.

You contend, in essence, that a pricing committee does not control public business within the meaning of the Act because a committee's discretion is limited in advance by the Board. While we are not aware of any judicial or attorney general opinion addressing an analogous situation, we believe that existing opinions of this office resolve your contention. This office has concluded that a governmental body need not have total and complete control over public business or public policy in order to be subject to the strictures of the Act. In Attorney General Opinion DM-284, for example, this office considered whether several associations established under the Insurance Code were governmental bodies subject to the Act. *See* Tex. Att'y Gen. Op. No. DM-284 (1994). The opinion concluded that although the former State Board of Insurance and the Commissioner of Insurance exercised some control over these associations and the associations were not completely autonomous, they were nevertheless subject to the Act because they were not merely advisory bodies and exercised some control and supervisory authority over public business. *See id.* at 4; *see also* Tex. Att'y Gen. Op. No. H-438 (1974) (governmental body need not exercise complete control over public business in order to be subject to the Act; supervision over public business is sufficient). Here, although the Board's resolution may limit the discretion of a pricing committee, it appears that a resolution also authorizes a committee to exercise substantial delegated authority within those limits to negotiate bond sale terms and to execute a bond purchase contract on the Board's behalf *without subsequent action by the Board. Because a pricing committee exercises authority over a bond sale that is not contingent on subsequent Board action,* we believe that a pricing committee exercises sufficient control over public business to constitute a governmental body within the meaning of the Act.

Now we address whether a pricing committee may hold its meetings in the office of an underwriter in New York City or another financial center outside the state. We conclude that the Act requires a meeting of a governmental body to be held in a location accessible to the public and therefore precludes a pricing committee from meeting in an inaccessible location, such as the office of an underwriter in another state. The Act does not contain any language governing meeting locations, and we have not been able to locate any Texas judicial or attorney general opinion addressing this issue. Our conclusion is based on the language of the Act, which presupposes that a meeting is physically accessible to the public.

"The Act is intended to safeguard the public's interest in knowing the workings of its governmental bodies." *Cox Enterprises, Inc. v. Board of Trustees*, 706 S.W.2d 956, 960 (Tex. 1986). To this end, section 551.002 of the Government Code provides that every meeting of a governmental body must be open to the public except as provided elsewhere in the Act. *See* TEX. GOV'T CODE ANN. § 551.002 (Vernon 1994). We believe that section 551.002 requires that a meeting must be physically accessible to the public. While a governmental body may conduct closed sessions regarding certain matters, *see id.* §§ 551.071-.085 (Vernon 1994 & Supp. 1999) (bases for executive sessions), it may do so only if the governmental body first meets in open session, *see id.* § 551.101 (Vernon 1994). Again, the announcement that a governmental body will

meet in executive session must be physically accessible to the public. Even the recent provision authorizing a governmental body to conduct a meeting by videoconference call assumes that members of the public will have physical access to each location of the meeting where a member of the governmental body will be physically present. *See id.* § 551.126(d) (Vernon Supp. 1999)("Each of the locations shall be open to the public during the open portions of the meeting.").[2]

We note that section 551.001(4) of the Act provides that the term "meeting" does not include the attendance of a quorum of a governmental body at a regional, state or national convention or workshop "if formal action is not taken and any discussion of public business is incidental to the . . . convention[] or workshop." *Id.* § 551.001(4) (Vernon 1994). Section 551.001(4) allows members of a governmental body to participate in certain types of conventions or workshops held outside the governmental body's jurisdiction if the members do not take final action or deliberate regarding public business. Section 551.001(4) does not authorize a governmental body to hold a meeting at a location inaccessible to the public.

In sum, although no provision of the Act mandates where meetings must be held or expressly prohibits a governmental body from holding a meeting at an inaccessible location, the Act's provisions assume that meetings will be held in locations accessible to the public. A meeting held in an inaccessible location would violate the Act. Whether a meeting location is accessible to the public for purposes of the Open Meetings Act is ultimately a question of fact, however, and may depend upon, for example, the type of governmental body, the nature of the interested public, the meeting location, and its distance from the governmental body's jurisdiction. *See, e.g., Wiedemann v. Town of Hilton Head Island,* 500 S.E.2d 783, 785-86 (S.C. 1998) (town council required to demonstrate necessity of holding workshop at private club 45 miles outside city's municipal limits); *Rhea v. School Bd. of Alachua County,* 636 So.2d 1383, 1386 (Fla. Dist. Ct. App. 1994) (meeting of county school board held 100 miles from board's headquarters at convention hotel did not afford citizens of county reasonable opportunity to attend); Kan. Att'y Gen. Op. Nos. 86-153 (meeting of Kansas Dental Board in Kansas City, Missouri at dental school reunion not inaccessible to the interested public for purpose of Kansas Open Meetings Act); 82-133 (retreat of Kansas municipal governing body in Colorado mountains unreasonably inaccessible to residents of municipality and would violate Kansas Open Meetings Act). Although this office is not a trier of fact and may not be able to resolve this fact-bound issue in other instances,[3] we find it highly unlikely that a meeting of a Texas governmental body in an underwriter's office in New York City, half a continent's distance from the state, is accessible to the public for purposes of the Texas Open Meetings Act.

---

[2]The Seventy-sixth Legislature has enacted, and the Governor has signed into law, Senate Bill 1368, which renumbers section 551.126, added by Act of May 30, 1997, 75th Leg., R.S., ch. 1038, § 2, 1997 Tex. Gen. Laws 3896, 3897, as section 551.127. *See* Act of April 23, 1999, 76th Leg., R.S., S.B. 1368, § 19.01(50) (1999) (enacting nonsubstantive corrections to various codes) (effective September 1, 1999).

[3]*See* Tex. Att'y Gen. Op. Nos. JC-0007 (1999) at 5 ("[t]his office does not make fact findings"); DM-383 (1996) at 2 (questions of fact are inappropriate for opinion process); DM-98 (1992) at 3 (questions of fact cannot be resolved in opinion process); H-56 (1973) at 3 (improper for Attorney General to pass judgment on matter that would be question for jury determination); M-187 (1968) at 3 (Attorney General cannot make factual findings).

## S U M M A R Y

A pricing committee appointed by Texas Public Finance Authority Board of Directors pursuant to section 3 of article 717q of the Revised Civil Statutes to act on the Board's behalf in negotiating a bond sale and executing a bond purchase contract is a governmental body subject to the Open Meetings Act, TEX. GOV'T CODE ANN. ch. 551 (Vernon 1994 & Supp. 1999). Because the Act requires a meeting of a governmental body to be held in a location accessible to the public, it precludes a pricing committee from meeting in an inaccessible location, such as the office of an underwriter in another state.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General