OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 27, 2002

Mr. Charles Miller
Chair, Board of Regents
University of Texas System
201 West Seventh Street
Austin, Texas 78701-2981

Opinion No. JC-0487

Re: Whether the Board of Regents of the University of Texas System may hold a public meeting in Mexico (RQ-0448-JC)

Dear Mr. Miller:

You have requested our opinion as to whether the Board of Regents of the University of Texas System [hereinafter "the Board"] may hold a public meeting in Mexico. For the reasons explained below, we conclude that it may not do so under current Texas law.

You indicate:

> The Chairman of the Board of Regents of The University of Texas System would like to schedule a meeting in Mexico between representatives of an institution of higher education in Mexico and representatives of the Board of Regents. It is anticipated that a quorum of the Board of Regents will attend the meeting. The purpose of the meeting will be to discuss the best practices related to distance education; to observe firsthand the technology and newest methods being used at institutions in Mexico; and to consider methods to enhance ongoing cooperative educational efforts between institutions in the U.T. System and institutions of higher education in Mexico. Such cooperative efforts have the potential for expanding the educational experiences available in Texas and in Mexico. These purposes can be best achieved if the meeting is held at an appropriate place in Mexico so that the members of the Board of Regents may evidence the Board's desire to enhance cross-Border relationships by scheduling the first meeting of this type in Mexico.[1]

---

[1]Letter submitted on behalf of the University of Texas System Board of Regents, Charles Miller, Chair, from W. O. Schultz II, Office of the General Counsel, The University of Texas System, to Honorable John Cornyn, Texas Attorney General, at 1 (Oct. 10, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

The Open Meetings Act, chapter 551 of the Government Code, (the "Act"), applies to meetings of every "board, commission, department, committee, or agency within the executive or legislative branch of state government that is directed by one or more elected or appointed members." TEX. GOV'T CODE ANN. § 551.001(3)(A) (Vernon Supp. 2002). The Board of Regents of the University of Texas System is a "governmental body" within this definition. "The Act is intended to safeguard the public's interest in knowing the workings of its governmental bodies." *Cox Enters., Inc. v. Bd. of Trs.*, 706 S.W.2d 956, 960 (Tex. 1986). Section 551.002 of the Government Code provides that every meeting of a governmental body must be open to the public except as provided elsewhere in the Act. *See* TEX. GOV'T CODE ANN. § 551.002 (Vernon 1994). We first consider whether a meeting of a quorum of a governmental body may be held in a foreign country.

As this office recently concluded in Attorney General Opinion JC-0053, the Act presupposes that a meeting is physically accessible to the public. *See* Tex. Att'y Gen. Op. No. JC-0053 (1999). Indeed, we specifically concluded that section 551.002 of the Government Code, which provides that every meeting of a governmental body must be open to the public except as provided elsewhere in the Act, *see* TEX. GOV'T CODE ANN. § 551.002 (Vernon 1994), requires that a meeting must be physically accessible to the public. This construction of the statute was based on a number of provisions of the Act that clearly contemplate that meetings are and must be physically accessible to the public. For example, while a governmental body may conduct closed sessions regarding certain matters, *see id.* §§ 551.071-.085 (Vernon 1994 & Supp. 2002) (bases for executive sessions), it may do so only if the governmental body first meets in open session, *see id.* § 551.101 (Vernon 1994). The announcement that a governmental body will meet in executive session must be physically accessible to the public. Additionally, the provision authorizing a governmental body to conduct a meeting by videoconference call assumes that members of the public will have physical access to each location of the meeting where a member of the governmental body will be physically present. *See id.* § 551.127(e) (Vernon Supp. 2002). ("Each of the locations shall be open to the public during the open portions of the meeting."). Furthermore, section 551.001(4) of the Act, which provides that the term "meeting" does not include the attendance of a quorum of a governmental body at a regional, state or national convention or workshop "if formal action is not taken and any discussion of public business is incidental to the . . . convention[] or workshop," *see id.* § 551.001(4), allows members of a governmental body to participate in certain types of conventions or workshops held outside the governmental body's jurisdiction, but only if the members do not take final action or deliberate regarding public business. In other words, a governmental body may not hold a meeting at a location inaccessible to the public. All of these provisions assume or require that the public will have physical access to meetings under the Act, as do many other of the Act's provisions. *See, e.g., id.* §§ 551.023 (providing person in attendance with right to record meeting); .042 (procedure for handling inquiries from members of the public at meetings) (Vernon 1994). Thus, we must determine whether a meeting held in Mexico would be physically accessible to the public.

You do not indicate the location in Mexico where the proposed meeting would be held. In our opinion, however, the holding of a meeting at *any* location outside the geographical boundaries of the United States would contravene the Open Meetings Act. We have previously said that "section 551.002 requires that a meeting be physically accessible to the public. While a governmental body may conduct closed sessions regarding certain matters, it may do so only if the governmental body first meets in open session." Tex. Att'y Gen. Op. No. JC-0053 (1999) at 5 (citations omitted). In Attorney General Opinion JC-0053, we considered whether a pricing committee of the Texas Public Financing Authority Board of Directors was permitted to hold a meeting at the offices of an underwriter in New York City. In finding that the Open Meetings Act would preclude holding a meeting at such location, the Attorney General stated the following:

> [A]lthough no provision of the Act mandates where meetings must be held or expressly prohibits a governmental body from holding a meeting at an inaccessible location, the Act's provisions assume that meetings will be held in locations accessible to the public. A meeting held in an inaccessible location would violate the Act. Whether a meeting location is accessible to the public for purposes of the Open Meetings Act is ultimately a question of fact . . . . Although this office is not a trier of fact and may not be able to resolve this fact-bound issue in other instances, we find it highly unlikely that a meeting of a Texas governmental body in an underwriter's office in New York City, half a continent's distance from the state, is accessible to the public for purposes of the Texas Open Meetings Act.

*Id.* at 6 (citations and footnote omitted).

Two of the opinions cited in Attorney General Opinion JC-0053 are relevant to the question you pose. In Kansas Attorney General Opinion 82-133, the issue was "whether . . . a meeting of the Lawrence City Commission in the Colorado mountains would be so inaccessible to the public as to not be 'open' to the public within the meaning of the [Kansas Open Meetings] Act." Kan. Att'y Gen. Op. No. 82-133, 1982 WL 187622, at *1. The Attorney General of Kansas said that:

> [w]ithout question, it would be inconvenient and expensive for those wishing to attend the meetings of the Lawrence City Commission to be forced to travel hundreds of miles to the Colorado mountains to attend such meetings. Such expense and inconvenience is an effective bar to attendance by most, if not all, Lawrence residents, the only class of citizens of the "public" at large keenly interested in the business and affairs of the city commission.

*Id.* at *2.

In *Rhea v. School Board of Alachua County*, 636 So. 2d 1383 (Fla. Dist. Ct. App. 1984, rev. denied), the school board of Alachua County, Florida, sought to hold its meeting in Orlando, more than 100 miles from the board's headquarters. In holding that a meeting held at that location would violate the Florida version of the Open Meetings Act, the court said that, "[f]or a meeting to be 'public,' it is essential that the public be given advance notice and a reasonable opportunity to attend." *Rhea*, 636 So. 2d at 1384-85. "[T]he relevant 'public,' the community that would be affected by the Board's official actions, is Alachua County." *Id.* at 1385.

In 1996, the Attorney General of Florida considered whether a city's police pension board was authorized to hold a meeting in a facility to which the public had limited access. The Florida Attorney General declared:

> This office has advised public boards or commissions to avoid holding meetings in places not easily accessible to the public.
>
> [P]ersons who wish to attend the pension board meeting may be reluctant to attend a meeting at a place not normally open to the public at which they must provide identification to enter and must leave such identification while in the building. In addition, before entering the meeting room, according to your letter, persons must obtain the permission of the receptionist before being allowed "to enter the inner offices where the conference room is located." Such conditions would appear to have a chilling effect on the public's willingness to attend.

Fla. Att'y Gen. Op. No. 96-55, 1996 WL 562019, *2.

Applying these principles to the question you pose, we are convinced that a body of statewide jurisdiction, such as the University of Texas System Board of Regents, may not lawfully hold a public meeting in Mexico. As several of the authorities cited have noted, distance is one major factor in determining whether a meeting is accessible to the public. Although you have not indicated a particular location in Mexico where the proposed meeting might be held, it is clear that distance cannot be the controlling factor. After all, the Board is a body with statewide jurisdiction, one with a campus in El Paso, and it is not distance that would preclude the Board from holding a meeting in Ciudad Juarez, Mexico, just across the border from El Paso.

Rather, it is accessibility and jurisdiction. A resident of El Paso traveling to a meeting in Juarez is obliged to cross an international border, with the necessity of presenting identification, answering questions, and quite possibly, submitting to a search of his or her person and/or vehicle, both upon entering Mexico and upon re-entering the United States. Like the identifications and permissions addressed in Florida Attorney General Opinion 96-55, these requirements "would appear to have a chilling effect on the public's willingness to attend." *Id.* at *2. If the meeting were

held in a location other than a border city, there would be the additional expense and inconvenience of traveling.

Nor is public accessibility the only difficulty. An individual who crosses into Mexico subjects himself to the laws, customs, and language of a foreign jurisdiction. If he drives, he may need to obtain special insurance to cover his person and his vehicle. Furthermore, the actions of the Board itself in Mexico may be problematical. If the Board, in a meeting held in Mexico, were alleged to have violated that portion of the Open Meetings Act that regulates executive sessions, it is unclear whether any Texas-based prosecutor would have jurisdiction to bring criminal charges. In addition, any civil action brought against the Board for alleged violations would be greatly complicated by the fact that the conduct took place in a foreign jurisdiction. In sum, we believe it is highly likely that a court would conclude, as a matter of law, that a Texas public body may not hold a public meeting outside the geographical boundaries of the United States. As a result, we find that a quorum of the Board of Regents of the University of Texas System is prohibited from holding a meeting in Mexico.

You suggest that the problem of accessibility may be cured by certain ameliorative measures. In particular, you propose the following:

- The proposed meeting would be posted and held at a location open and accessible to the public.

- The meeting would be broadcast by two-way videoconferencing technology to an appropriate U.T. campus site in all geographic areas in Texas where component institutions of the U.T. system are located.

- If the selected meeting site in Mexico allows Internet broadcast of the meeting, it will be broadcast.

- The posted notice of the meeting will advise the public of the location of the broadcast site at each component institution and how to access the meeting via personal computer if Internet broadcast can be made.

Request Letter, *supra* note 1, at 2.

As to the first of these proposals, we have already found that a meeting held in Mexico is *per se* not physically accessible to the public. The second, third and fourth proposals require a more detailed analysis. Subsection 551.125(b)(1) of the Government Code permits a governmental body to hold a meeting by telephone conference call if "an emergency or public necessity exists within the meaning of Section 551.045." TEX. GOV'T CODE ANN. § 551.125(b)(1) (Vernon Supp. 2002).

Section 551.045 provides that an emergency or urgent public necessity exists "only if immediate action is required of a governmental body because of . . . an imminent threat to public health and safety[,] or . . . a reasonably unforeseeable situation." *Id.* § 551.045(b) (Vernon 1994). You do not suggest that a meeting held under the circumstances you describe would constitute a valid "emergency" meeting. This office has followed the legislature in narrowly construing these provisions of the Act. *See* Tex. Att'y Gen. Op. Nos. JC-0194 (2000) at 4 ("No governmental body subject to the Open Meetings Act may hold a meeting by telephone or videoconference except as expressly authorized by the Act."); DM-478 (1998) (institution of higher education was not authorized to conduct a regular meeting by telephone conference call).

Section 551.127 permits a governmental body, in limited situations, to hold a meeting by videoconference call. Subsection (b), enacted prior to 2001, provides that "[a] meeting may be held by videoconference call only if a quorum of the governmental body is physically present at one location of the meeting." Act of May 30, 1997, 75th Leg., R.S., ch. 1038, 1997 Tex. Gen. Laws 3896. In House Bill 35, the Seventy-seventh Legislature added subsection (c), which states:

> A meeting of a state governmental body or a governmental body that extends into three or more counties may be held by videoconference call only if a majority of the quorum of the governmental body is physically present at one location of the meeting.

TEX. GOV'T CODE ANN. § 551.127(c) (Vernon Supp. 2002). Thus, prior to 2001, *any* governmental body could hold a meeting by videoconference call if a quorum was physically present at one location. Under the terms of subsection (c), a state governmental body needs to have only a *majority* of the quorum physically present at one location. Thus, under the latter scenario, if a board has fifteen members, only five members need to be physically present at a single location.

Neither subsection (b) nor subsection (c) specifically place any limitation on the location at which a quorum, or a majority of a quorum, must be physically present. Nothing in the legislative history of House Bill 35, which amended section 551.127, suggests, however, that such physical location may be outside the boundaries of the State of Texas. *See* Act of May 23, 2001, 77th Leg., R.S., ch. 630, 2001 Tex. Gen. Laws 1190-91. According to the bill analysis accompanying the enrolled bill, the purpose of House Bill 35 was to change, in certain instances, the number of members whose physical presence is required from a quorum to a majority of a quorum, with the intent of "lowering the costs associated with traveling to the meetings and . . . increasing participation in the meetings." HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 35, 77th Leg., R.S. (2001). Even if *some* members might participate from a location outside the state, a matter which we do not address here, the statute surely does not contemplate that a *quorum* of board members might be physically present at such location. Furthermore, if the intent of the amendment to section 551.127 is to *lower* the costs associated with traveling, that intent could not be furthered by permitting a quorum, or a majority of a quorum of board members to incur the costs associated with traveling to a foreign country. In our view, subsection (c)'s requirement that "a

majority of the quorum" be physically present at one location refers to a location that is accessible to the public, and hence, as we have previously noted, at least within the State of Texas. *See* Tex. Att'y Gen. Op. No. JC-0053 (1999) at 6. (Former section 551.126, renumbered by the Seventy-sixth Legislature as section 551.127,[2] assumes that the public will have physical access to each location of the meeting where a member of the governmental body will be physically present.) In short, the provision of the Open Meetings Act which would permit a governmental body to use videoconferencing prescribes very limited circumstances under which such a meeting may take place.

Furthermore, if videoconferencing is an acceptable substitute for meetings physically held in a foreign country, it necessarily follows that it is an adequate substitute for meetings held within the geographical jurisdiction of the particular governmental body. A city council could, under this scenario, bar public entry to its meetings so long as it provided for television monitors to accommodate members of the public at a different location. As we have said, the legislature has permitted videoconferencing as a substitute for in-person meetings only under very limited circumstances. The ameliorative measures you propose would require an extensive broadening of the Act. Such expansion is a task for the legislature.

Your third and fourth proposals suggest that the meeting site in Mexico might allow Internet broadcast of the Board's meeting with Mexican officials. Although section 551.128 of the Government Code permits a governmental body to broadcast a meeting via the Internet, such a broadcast in no way substitutes for conducting an in-person meeting. *See* TEX. GOV'T CODE ANN. § 551.028 (Vernon Supp. 2002). Rather, it merely provides an additional means of disseminating the meeting. In sum, it is our opinion that the Board of Regents of the University of Texas System would fail to comply with the Open Meetings Act if it held a meeting of a quorum of its members in Mexico. We note, however, that nothing in the Act would prohibit the Board of Regents from sending less than a quorum of its members to Mexico "to observe firsthand the technology and newest methods being used at institutions in Mexico," and "to consider methods to enhance ongoing cooperative educational efforts between institutions in the UT System and institutions of higher education in Mexico." Request Letter, *supra* note 1, at 1.

---

[2]*See* Act of Apr. 23, 1999, 76th Leg., R.S., ch. 62, art. 19, § 19.01(50), 1999 Tex. Gen. Laws 127, 414.

(JC-0487)

## S U M M A R Y

Under current Texas law, the Open Meetings Act prohibits the Board of Regents of the University of Texas System from holding a meeting of a quorum of its members in Mexico, regardless of whether the Board broadcasts the meeting by videoconferencing technology to all geographic areas in Texas where component institutions of the University of Texas System are located.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee