

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00341-CV

---

IN RE CITY OF AMARILLO, TEXAS

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 110998-D-CV, Honorable William C. Sowder, Presiding

August 16, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

The underlying declaratory judgment action pits taxpayer Alex Fairly against the City of Amarillo. At issue was the City's $260.5 million plan for renovating and expanding its civic center complex without voter approval. After the trial court rendered judgment for Fairly, finding among other things that the City violated the Texas Open Meetings Act (TOMA), the City and Fairly filed notices of appeal. We affirm the trial court's judgment.

## Background

In November 2020, more than 60% of the City's voters defeated a proposition for issuance of $275 million in general obligation bonds payable from ad valorem taxes to

fund improvement and expansion of the City's civic center complex. Per statute, this meant the City could not issue certificates of obligation to fund the proposed civic center project for three years.[1]

Some city officials remained insistent that the City needed to improve the civic center, but they wanted to avoid returning to the voters. So, after conferring with legal counsel, two officials[2] and city staff put into place a three-step plan. First, they proposed the city council pass Ordinance 7980 to designate the existing civic center and another building as part of the City's Tax Increment Reinvestment Zone (TIRZ #1) project plan. Second, they met behind-the-scenes with lenders and legal counsel to pre-negotiate a $260.525 million financing deal and language for proposed Ordinance 7985 wherein the City would issue tax anticipation notes. This method of funding requires no voter approval, but also carries a short repayment schedule: seven years. So, to try to avoid risk of an enormous tax increase this project would pose,[3] they planned a third step: future issuance of 30-year refunding bonds to "refinance[e]" the debt authorized under Ordinance 7985. If executed successfully, this plan would presumably allow the City to obtain what voters had already rejected: a civic center construction project funded by long-term bond financing.

---

[1] *See* TEX. LOC. GOV'T CODE ANN. § 271.047(d).

[2] These officials referred to their joint work as that of a two-person "subcommittee."

[3] According to the testimony of Fairly's expert, the payment schedule passed with Ordinance 7985 stood to "approximately double[]" Amarillo citizens' tax rate within the first few years.

On Friday May 20, 2022, the City posted public notice of a city council meeting for May 24, 2022. Attached to the six-page agenda were 197 pages of related documents. The following list offers a sampling of the information noticed:

- Consent Item E, which considered proposed Ordinance 7980 to amend TIRZ #1 to include "expansion and renovation, including the addition of an arena to the Amarillo Civic Center Complex . . . ." The agenda says this proposed change is to "allow for City Council flexibility when evaluating any future methods to fund Civic Center Complex or Santa Fe Depot improvements . . . ." An Agenda Transmittal Memo labeled with an "E" includes a draft of the proposed ordinance.[4]

- Consent Item G, which considered an interlocal agreement between the City and the Panhandle Regional Commission's Area Agency on Aging of the Panhandle. Citizens could find details about terms of the proposed agreement by reviewing an Agenda Transmittal Memo labeled with a "G," along with a nine-page agreement watermarked with the word "DRAFT."

- Consent Item Q, which considered a proposed sale of approximately 365 acres of real estate. Amount of the proposed sale price is listed as $1.725 million, minus closing costs and expenses. Citizens could find details about the terms of the proposed sale by reviewing an Agenda Transmittal Memo labeled with a "Q," which stated the number of bidders and the highest offered amount.

- Nonconsent Items A-D, which considered proposed ordinances to rezone certain portions of the City. Citizens reviewing the notice could find details about the terms of the proposed ordinances by reviewing the agenda items, an Agenda Transmittal Memo labeled with "A" through "D," respectively, as well as the language of the proposed ordinances.

---

[4] The City intended for Ordinance 7980 to satisfy the first step in the plan: i.e., to move the civic center project under TIRZ #1. Assistant city manager Andrew Freeman admitted that placing the civic center into TIRZ #1 was never intended to dedicate funds for that project. Instead, this change on paper was to permit the City to characterize the notes issued per Ordinance 7985 as "debt," thereby circumventing the funding restrictions imposed by the Legislature in 2021 and avoiding the potential need for voter approval. *See* TEX. TAX CODE ANN. § 26.012(7).

When the agenda discussed the final item for consideration – Nonconsent Item L– citizens were not given many specifics about proposed Ordinance 7985. The agenda entry reads in full as follows:

> This item is the discussion and consideration of an ordinance authorizing the issuance of the City of Amarillo, Texas Combination Tax and Revenue Notes, Series 2022A resolving other matters incident and related thereto including the approval of a paying agent/registrar agreement and a purchase contract.

The agenda does not tell citizens the purpose of issuing the notes or the amount. It is only on the final page of the 197-page attachment, in Transmittal Memo "L," that the reader learns the combination tax and revenue notes are in-part for "the purpose of paying contractual obligations to be incurred for (i) acquiring, constructing, improving, expanding, and equipping the City's convention center facilities, to-wit: the City's civic center complex, including the addition of an arena related thereto . . . ."

Both the agenda and transmittal memo for Nonconsent Item L omit language for the proposed ordinance as well as any related contract terms or supporting documents. Had citizens been given access to such information, they would have learned the City was intending to use Ordinance 7985 to authorize borrowing $260.525 million with Frost Bank—roughly doubling the city's debt. Citizens also would learn the notes would be secured solely through ad valorem taxes, not a "combination" of taxes "and revenue" like was stated in the notice. And finally, if citizens had been able to know the terms of the ordinance or documents, they would see the City was proposing to finance the project

4

over a seven-year term, not over 30-years the City's staff described during the city council meeting.[5]

The city council passed Ordinances 7980 and 7985 on May 24, 2022. Three days later, Fairly filed a declaratory judgment action under Texas Civil Practice and Remedies Code Chapter 37 (UDJA) seeking to void Ordinances 7980, 7985, and the anticipation notes. Thereafter, the City filed an action for expedited declaratory relief under Texas Government Code Chapter 1205 and sought declarations that the ordinances and anticipation notes were valid. On the City's motion, the two actions were consolidated.

The case was tried to the bench. On October 25, 2022, the court signed a final judgment which, among other things, invalidated the two ordinances and the anticipation notes.[6] The judgment also awarded Fairly attorney's fees of $351,613.82 through trial, with additional fees conditioned on his successful defense of the judgment on appeal. Findings of fact and conclusions of law were prepared and filed. As noted, both sides filed notices of appeal.

---

[5] City CFO Laura Storrs told the city council and citizens attending the meeting the funding option "on your agenda, [] is to issue $260,000,000 in tax notes. So what this would look like – we have up here on the screen . . ." followed by a chart that reflected repayment "looking out over a 30-year time period." City Manager Jared Miller conceded that the ordinance's stated redemption schedule (7-years) was not explained at the May 24 meeting: "What we presented was a refinancing."

[6] The City's brief does not advocate for the validity of Ordinance 7980, but only posits any invalidity would not affect Ordinance 7985. We affirm the trial court's judgment invalidating Ordinance 7980.

**Analysis**

A.  <u>"Jurisdiction to Invalidate Ordinance 7985" and the Anticipation Notes</u>

We begin with a discussion regarding jurisdiction.  When identifying the issues on appeal, the City stated the following: "Did the trial court erroneously invalidate Ordinance 7985 and the City's Notes where: . . . (ii) the trial court lacked jurisdiction to invalidate Ordinance 7985 and the City's Notes?" (ellipses added).  No portion of the City's brief makes the argument that the district court lacked jurisdiction to invalidate Ordinance 7985 or the anticipation notes.  Nor does the City offer any authority supporting the same.  Nevertheless, subject matter jurisdiction is a "non-waivable" issue that may be raised for the first time on appeal.[7]  We will therefore, on our own motion, review the district court's jurisdiction to render judgment as it pertains to Fairly's claims under TOMA.  *See Gibson v. Dynegy Midstream Services, L.P.*, 138 S.W.3d 518, 521 (Tex. App.—Fort Worth 2004, no pet.) (reviewing court's jurisdiction despite appellant's compliance with Appellate Rule 38's requirements).

With limited exceptions, TOMA requires "[e]very regular, special, or called meeting of a governmental body" to be open to the public.  TEX. GOV'T CODE ANN. § 551.002.  The Act permits "an interested person" to bring an action "by mandamus or injunction" to stop, prevent, or reverse TOMA violations.  TEX. GOV'T CODE ANN. § 551.142.  A governmental action taken in violation of TOMA is voidable.  TEX. GOV'T CODE ANN. § 551.141.  The UDJA gives Texas courts the "power to declare rights, status, and other legal relations

---

[7] *Kinder Morgan SACROC, LP v. Scurry Cnty.*, 622 S.W.3d 835, 842 (Tex. 2021) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993)).

whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a).

Fairly alleged several violations of TOMA in his petition and counterclaim. He requested declaratory relief under the UDJA, injunctive relief, and a direct violation of TOMA. Because of these alleged violations, Fairly requested the trial court declare Ordinances 7985 and 7980 to be voidable. This is sufficient to demonstrate the trial court's jurisdiction to hear Fairly's TOMA claims -- unless the City timely demonstrated it is immune from suit. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 555 (Tex. 2019) (recognizing that earlier cases "in effect conclude that declaratory relief is available under the Open Meetings Act, [but] in those cases we simply were not presented with, and did not address, the specific question of whether the Act waives immunity from suit for such relief.").

Although the City included governmental immunity among its list of defenses, nothing in the record indicates the City expressly sought to dispose of Fairly's TOMA claims on such grounds. In September 2022, the City filed a plea to the jurisdiction, but those arguments pertained to Chapter 26 of the Texas Tax Code, not alleged TOMA violations. Accordingly, even if the method in which Fairly alleged TOMA violations could have been jurisdictionally challenged, a question we need not resolve here, the City did not raise that issue in the trial court. Thus, "the [City] effectively tried the claims by consent." *Swanson*, 590 S.W.3d at 556 (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 n.1 (Tex. 2007)). We hold that the district court possessed jurisdiction to hear Fairly's TOMA claims, and this Court possesses jurisdiction to consider them on appeal.

7

B.  <u>The City's Obligations Under TOMA</u>

The district court struck down Ordinance 7985 for numerous reasons, including the City's failure to comply with its obligations under TOMA.  We begin with the City's fifth issue pertaining to TOMA compliance because resolution of this issue is dispositive of the City's challenge on appeal regarding the invalidity of Ordinance 7985 and the anticipation notes.  *See Martinez v. Matthews,* No. 07-16-00033-CV, 2017 Tex. App. LEXIS 10225, at *5 n.2 (Tex. App.—Amarillo Oct. 31, 2017, no pet.) (mem. op.) (citing TEX. R. APP. P. 47.1).

TOMA was enacted "to assure that the public has the opportunity to be informed concerning the transaction of public business."  *Terrell v. Pampa Indep. Sch. Dist.*, 572 S.W.3d 294, 298–99 (Tex. App.—Amarillo 2019, pet. denied) (citing *Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 300 (Tex. 1990)).  Generally, TOMA is satisfied when written notice of the date, time, place, and subject of each meeting held by a governmental body has been posted in a place readily-accessible to the general public at least seventy-two hours before the scheduled time of the meeting.  *See* TEX. GOV'T CODE ANN. §§ 551.041, .043.  The primary disagreement in this appeal centers on whether the City substantially complied with TOMA by sufficiently describing the "subject" to be discussed in the city council meeting, viz. Ordinance 7985.[8]

More than 35 years ago, our state's high court refined its jurisprudence when describing the specificity TOMA requires for certain subject matters, in *Cox Enters., Inc.*

---

[8] The parties do not contest the substance of the words in the City's notice; therefore, we determine its adequacy as a question of law.  *City & Menard Cty. Water Control & Improvement Dist. No. 1 v. Tex. Nat. Res. Conservation Comm'n,* 92 S.W.3d 624, 629 (Tex. App.—Austin 2002, no pet.).

8

*v. Board of Trustees*, 706 S.W.2d 956 (Tex.1986).  In that case, a school district was posting notices that listed the topics of its executive sessions in general terms, such as "personnel," "litigation," and "real estate matters."  The court noted its prior decisions had not fully addressed the extent of the notice required by the Act and had "set out a rudimentary standard for assessing the adequacy of the subject matter description given." *Id.* at 958.  Relying, in part, on an Attorney General opinion issued after the court's earlier decisions, the court observed there are times when certain matters of "special interest to the public" require that governmental bodies provide more detail than a generalized description of a topic to be discussed.  Because the school district had been occupied with a school desegregation lawsuit "for a number of years, and whose effect will be felt for years to come," the court reasoned that legal matter differed from more common "litigation" affecting the public's interest.  The district's agenda listing "litigation" therefore failed to provide adequate notice that the desegregation suit would be discussed.  *Id. at* 959.  The court similarly reasoned that because hiring a school superintendent would be of greater special interest to the public than general hiring decisions, the district was required to do more than merely state "personnel" matters would be discussed in the meeting.  *Id.*  The court reiterated that while earlier decisions may have found general notice as substantially in compliance with TOMA, "less than full disclosure is not substantial compliance."  *Id.* at 960.

Five years later, the Supreme Court offered further insight when examining the sufficiency of a city's notice regarding a condemnation ordinance, in *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 763 (Tex. 1991).  In that matter, the City of

San Antonio had posted an agenda item notifying the public that its city council would consider the following during its February 15, 1990, meeting:

> An Ordinance determining the necessity for and authorizing the condemnation of certain property in County Blocks 4180, 4181, 4188, and 4297 in Southwest Bexar County for the construction of the Applewhite Water Supply Project.[9]

After the ordinance passed, a landowner brought suit, arguing the city's notice failed to describe the property in sufficient detail and did not inform landowners how their particular land would be affected. The Supreme Court held the city's notice was adequate to inform members of the public that the city would be considering an ordinance to condemn certain land and identified the blocks potentially affected. TOMA does not require the government to notify "specific individuals whose private interests are most likely to be affected by the proposed government action." *Id.* at 765.

The factual circumstances in the present appeal demonstrate, and the trial court found, that matters regarding the City's efforts to borrow hundreds of millions of dollars to construct or improve its civic center is of special interest to the general public in Amarillo. Testimony shows the civic center project had occupied about a decade of the city council's time, and evidence from both sides revealed how financing this project would have an effect to be felt for years to come. Moreover, perhaps even more illustrative than the facts presented in *Cox*, this issue had been expressly submitted to – and rejected by – Amarillo's citizens less than two years earlier. Consistent with *Cox's* teaching, we believe the City was required to provide detailed notice of its intentions to issue notes for

___

[9] Unlike in *Cox*, nothing from the history of the case indicates these condemnations were of "special interest to the public."

10

a project including the civic center. *See Cox*, 706 S.W.2d at 959. *See also City of Austin v. Lake Austin Collective, Inc.*, No. 14-18-00068-CV, 2019 Tex. App. LEXIS 10250, at *4 (Tex. App.—Houston [14th Dist.] Nov. 26, 2019, no pet.) (mem. op.). We assess the adequacy of the notice by comparing it to the actions taken at the May 24, 2022, meeting. *See Rettberg v. Texas Dep't of Health*, 873 S.W.2d 408, 412 (Tex. App.—Austin 1994, no writ).

In the present appeal, we hold the City's notice regarding Ordinance 7985 failed to substantially comply with TOMA because it failed to give the reader adequate notice of the action the City sought to take. First, the agenda's discussion of nonconsent item L fails to adequately inform the reader that the purpose of the anticipation notes would be to revive the previously-voter-rejected civic center project. Much like the problem at issue in *Cox* regarding "litigation," a reader would have no way of knowing the agenda's reference to "combination tax and revenue notes" pertains to the civic center, unless the additional phrase "other matters incident and related thereto" is sufficient to put the reader on inquiry notice and to investigate 197 pages further on the chance the civic center might be mentioned.

Second, even if such a reader looked to the transmittal memo, she would not know the amount of the "combination tax and revenue notes" to be voted on at the city council meeting was anticipated to be in excess of $260 million; the City omitted this fact. While we agree TOMA does not require the City to "state all of the consequences which may necessarily flow from the consideration of the subject stated,"[10] its failure to disclose an

---

[10] *See Tex. Tpk. Auth. v. City of Fort Worth*, 554 S.W.2d 675, 676 (Tex. 1977).

11

intent to finance more than a quarter-billion-dollars of public funds prevented the public from determining the consequences on its own. We disagree with the City's position that TOMA is satisfied so long as the notice mentions possible debt issuance of some amount; the City would be permitted to remain tight-lipped until the day of the vote before unveiling a plan to commit to borrow $26 million, $260 million, or $2.6 billion. Such logic is contrary to the purpose of TOMA and runs afoul of the Supreme Court's reasoning in *Cox*, which rejected generalized descriptions when the matter under consideration is of special interest to the public. Here, as in *Cox*, "less than full disclosure is not substantial compliance." *Id.* at 960.

Third, comparing the City's notice to its actions,[11] we note nonconsent item L's nebulous expressions of intent are further confounded because of a statement that is patently incorrect. Even if we charge the public with knowledge that anticipation notes are financed over seven years, the City's notice provides no reasonable opportunity to know what Ordinance 7985 intends to commit during that period. That is because the executed ordinance and financing documents differ from what the notice tells the public regarding the funds securing the debt: ad valorem taxes, not taxes and revenues. Even if an Amarillo citizen could know the City intended to issue $260.525 million in notes, she would not accurately know how the City intended to secure these "combination tax and revenue notes" unless she disregarded the words "combination" and "revenue," and assumed all the debt was being secured by tax dollars. Inclusion of these words in the

---

[11] *See Rettberg*, 873 S.W.2d at 412.

12

City's notice cannot be ignored as a mere "typo," as they mislead even the most informed citizen about the extent to which Ordinance 7985 intended to commit tax dollars.

The City argues a citizen's appearance at the city council meeting to discuss the civic center "flatly refute[s]" the trial court's conclusions that notice was deficient. Fundamentally, the City's argument is flawed because it runs contrary to the language requiring the government provide advance notice of the subject of the meeting. TEX. GOV'T CODE ANN. §§ 551.041, .043. Does attendance by one excuse the City's obligations to its other citizens? And contrary to the City's suggestion, the record reflects the citizen was first told by a councilmember the weekend before the May 24 meeting that the civic center issue was going to be discussed. Only then did the citizen obtain and review a copy of the City's notice. As the trier of fact, the court was entitled to determine what led the citizen to attend the meeting. *See, e.g., In re A.M.,* No. 07-21-00052-CV, 2021 Tex. App. LEXIS 5447, at *11 (Tex. App.—Amarillo July 8, 2021, pet. denied) (mem. op.). Of course, the City's cured-by-attendance theory also overlooks the fact that City officials publicly presented a 30-year term for the notes' repayment, instead of the actual seven-year term. We conclude the City's notice regarding Ordinance 7985 did not substantially comply with the requirements of TOMA, and that a citizen's appearance at the city council meeting to discuss the civic center did not excuse the City from its legal obligations to the public. We therefore find no error by the trial court in declaring Ordinance 7985 and the anticipation notes void for want of sufficient notice. The City's fifth issue is overruled.

13

C. Attorney's Fees Awarded to Fairly

In its seventh issue, the City argues the trial court erred in awarding Fairly attorney's fees because Government Code Chapter 1205[12] makes no provision for the recovery of fees. In essence, the City is arguing that although Fairly's suit for declaratory relief was first filed under Chapter 37 of the Texas Civil Practice and Remedies Code, the City's counterclaim under Chapter 1205 had the effect of supplanting Fairly's ability to recover attorney's fees. We disagree.

The purpose of Chapter 1205 is to provide a "speedy final resolution of all contestants' claims" in public-securities declaratory-judgment proceedings and to dispose of such proceedings "with dispatch." *Narmah v. Waller Indep. Sch. Dist.,* 257 S.W.3d 267, 271–72 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Buckholts Indep. Sch. Dist. v. Glaser,* 632 S.W.2d 146, 150–51 (Tex. 1982)). "[I]t is apparent that the Legislature, in enacting [Chapter 1205's predecessor], intended to provide a method of adjudicating the validity of public securities which would be more efficient and quicker than the procedures theretofore available." *Hatten v. City of Houston,* 373 S.W.2d 525, 534–35 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.).

An issuer[13] may bring a declaratory judgment action under Chapter 1205[14] even if another matter is pending relating to the subject matter of the issuer's suit. TEX. GOV'T

---

[12] *See* TEX. GOV'T CODE ANN. Chapter 1205.

[13] In Chapter 1205 the term "issuer" of public security includes a municipality. *See* TEX. GOV'T CODE ANN. § 1205.001(1).

[14] *See* TEX. GOV'T CODE ANN. § 1205.021 (providing scope of declaratory relief available to an issuer under Chapter 1205).

CODE ANN. § 1205.025(4). The court may order consolidation of the two proceedings. TEX. GOV'T CODE ANN. § 1205.061(b)(1). Should a conflict or inconsistency exist between Chapter 1205 and another law, Chapter 1205 controls. TEX. GOV'T CODE ANN. § 1205.002(a).

The record reflects trial was a consolidation of the City's Chapter 1205 declaratory judgment action and Fairly's claims, including for relief under the UDJA and TOMA. As noted above, we have affirmed the judgment's declarations that sufficient notice required by TOMA was not provided, and that the ordinance and the notes are void. We are not shown, nor do we see, any conflict between Chapter 1205's speedy-disposition purpose and awarding attorney's fees under the UDJA or TOMA. Chapter 1205 does not expressly deny Fairly's entitlement to fees under another statute, and we decline the City's request to manufacture a conflict between the statutes. We overrule the City's seventh issue.

D. Fairly's Appeal

By a single issue, Fairly argues the trial court erred when reaching the conclusion that Ordinance 7985 complies with Texas Government Code section 1431.008(b). That subsection provides:

> A governing body that pledges to the payment of anticipation notes an ad valorem tax to be imposed in a subsequent fiscal year shall impose the tax in the ordinance or order that authorizes the issuance of the notes.

15

TEX. GOV'T CODE ANN. § 1431.008(b). As Fairly reasons, the anticipation notes were void "because Ordinance 7985 did not impose the ad valorem tax to be imposed in a future fiscal year that was purportedly pledged to fund the payments on the notes."

Assuming, *arguendo*, that Fairly is correct, we hold there is no basis for reversal for this reason at this time. *See San Antonio v. Aguilar,* 696 S.W.2d 648, 653 (Tex. App.—San Antonio 1985, writ ref'd n.r.e. in part, writ dism'd w.o.j. in part) ("If the controlling findings of fact will support a correct legal theory, incorrect legal conclusions will not require a reversal."). In this opinion, we have already affirmed the trial court's judgment voiding Ordinance 7985 and anticipation notes. Fairly's complaint that the trial court failed to make this requested declaration is of no moment because it would not afford Fairly greater relief than what he has already received. Fairly's issue is overruled.

## Conclusion

We affirm the judgment of the trial court.

Lawrence M. Doss
Justice

16