

NUMBER 13-09-00589-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHANDRASHEKHAR B. THANEDAR,            **Appellant,**

**v.**

DONNA INDEPENDENT SCHOOL DISTRICT,            **Appellee.**

### On appeal from the 398th District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Garza**

Appellant, Chandrashekhar B. Thanedar, challenges the trial court's judgment in favor of appellee, Donna Independent School District ("DISD"), in a suit Thanedar filed under the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. § 554.001–.010 (West 2004). In his suit, Thanedar alleged, among other things, that DISD, his employer,

suspended him with pay and later terminated his employment because he had previously reported to law enforcement that certain DISD officials had engaged in criminal behavior, including bribery, extortion, and theft.

Thanedar, appearing pro se both at trial and before this Court, sets forth fifteen issues on appeal. We construe them as seven and rearrange them as follows: (1) the trial court failed to comply with Texas Rules of Civil Procedure 296 and 297; (2) Thanedar's suspension and dismissal are void because DISD failed to comply with the Texas Open Meetings Act ("TOMA"), *see id.* §§ 551.001–.146 (West Supp. 2010); (3) Thanedar "substantially prevailed" in the case, thereby entitling him to fees under TOMA, *see id.* § 551.142; (4) the trial court erred by denying Thanedar's motion to strike DISD's affirmative defense of after-acquired evidence; (5) the trial court erred by failing to rule on certain motions before trial; (6) the jury charge was defective; and (7) there was no evidence supporting the verdict. We affirm.

## I. BACKGROUND

In March 2005, Thanedar applied for the position of DISD's chief financial officer ("CFO"). As part of the hiring process, Thanedar submitted a certificate indicating that, in 1983, he had passed the examination required to become a certified public accountant ("CPA") in Louisiana. According to DISD, the CFO was required to be a certified CPA, and Thanedar represented to the board's search committee that he was so certified. In fact, Thanedar was not, and never had been, certified or licensed as a CPA in Texas. *See* TEX. OCC. CODE ANN. §§ 901.251–.260 (West Supp. 2010) (listing requirements to obtain CPA certification in Texas). Unaware of this, the DISD board of trustees voted on April 11, 2005 to appoint Thanedar as the district's CFO, and

2

Thanedar began his work at that position on April 18, 2005.

In March and April of 2006, Thanedar began making reports to various local, state, and federal law enforcement agencies alleging that DISD officials had engaged in illegal activity, including "bribery, extortion, theft, E-Rate violations, overpayment of bills, [and] payroll overpayments" in connection with the construction of Stainke Elementary School in Donna, Texas. In defiance of the superintendent, Thanedar refused to sign a check paying the general contractor in charge of the construction, noting that investigations were still ongoing as to his allegations of wrongdoing.

The DISD board of trustees called a special board meeting for April 18, 2006. At this meeting, according to Thanedar, the board purportedly decided to suspend Thanedar with pay. Thanedar later received two letters: one dated April 19, 2006, stating that he had been suspended with pay; and one dated April 24, 2006, stating that DISD would not be renewing his employment contract. Believing that he was terminated because of the reports he made to law enforcement, Thanedar filed grievances pursuant to DISD policy, which were rejected.

Thanedar then sued DISD, asserting: (1) unlawful retaliation under the Whistleblower Act; (2) violations of TOMA; (3) violations of the due course of law provision of the Texas Constitution, see TEX. CONST. art. I, § 19; and (4) breach of contract. He sought damages, as well as an injunction reinstating him as CFO, and a declaration that his suspension and dismissal were invalid under TOMA.

The trial court granted a directed verdict in favor of DISD on all of Thanedar's causes of action other than his Whistleblower Act claim. The jury found against Thanedar on that claim, and the trial court rendered a take-nothing judgment in

accordance with the verdict. This appeal followed.

## II. Discussion

### A.  Findings of Fact and Conclusions of Law

By his first issue, Thanedar asserts that the trial court erred by declining to issue findings of fact and conclusions of law after Thanedar made requests pursuant to Texas Rules of Civil Procedure 296 and 297. *See* Tex. R. Civ. P. 296, 297. Following a bench trial, a trial court's duty to file findings of fact and conclusions of law is mandatory pursuant to a rule 296 request and a rule 297 reminder for the same. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 771 (Tex. 1989). However, the trial court has no such duty after granting a defendant's motion for directed verdict or after presiding over a jury trial. *See IKB Indus. (Nig.), Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997) ("The purpose of Rule 296 is to give a party a right to findings of fact and conclusions of law finally adjudicated after a conventional trial on the merits before the court. In other cases findings and conclusions are proper, but a party is not entitled to them."); *see also Ditto v. Ditto Inv. Co.*, 158 Tex. 104, 106, 309 S.W.2d 219, 220 (1958) (noting that the trial court's filing of findings of fact and conclusions of law following a jury trial "was neither necessary nor proper"). The trial court was under no duty to issue findings of fact and conclusions of law in this case.

Thanedar further contends by this issue that the judgment on appeal lacks finality because it "failed to specifically state that [it] actually disposed of all claims of parties, [and] failed to rule on dispositive issues . . . ." We disagree. The judgment expressly

4

ordered that Thanedar take nothing by way of his suit against DISD and stated specifically that "all relief not expressly granted herein is denied." Additionally,

> [w]hen a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties.

*N. E. Indep. School Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex. 1966); *see Vaughn v. Drennon*, 324 S.W.3d 560, 561 (Tex. 2010) (per curiam).

The trial court's judgment in this case was final and appealable. We overrule Thanedar's first issue.

## B.    Texas Open Meeting Act Claims

By his second and third issues, Thanedar claims that DISD "never legally terminated or suspended [his] employment"; that any adverse employment action taken against him "is void because DISD did not name [him] or his position as a subject in his notice of meeting"; and that DISD's board of trustees "took no ascertainable action" against him at any official board meeting. We construe these issues as challenging the trial court's directed verdict on Thanedar's claims brought pursuant to TOMA. A directed verdict is proper when (1) a defect in the opponent's pleadings makes them insufficient to support a judgment, (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Koepke v. Martinez*, 84 S.W.3d 393, 395 (Tex. App.—Corpus Christi 2002, pet. denied).

In his live pleading, Thanedar claimed that DISD "woefully failed to specifically describe or identify in its notice of April 18, 2006, that one of the subjects to be

5

addressed by the DISD during the meeting was the suspension of Thanedar's employment with the DISD and/or the non-renewal of Thanedar's employment 'contract' with DISD . . . ." It is undisputed that the notice of the April 18, 2006 meeting included "Discussion/Possible Action on Personnel" as a meeting topic but did not list Thanedar's name or his position specifically.

Section 551.002 of TOMA provides that "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." TEX. GOV'T CODE ANN. § 551.002; *see id.* § 551.001(3)(E) (defining "governmental body" to include a "school district board of trustees"). Section 551.041 of the statute states that "[a] governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." *Id.* § 551.041. Generally, as long as a meeting notice alerts the reader to the topic for consideration, it is not necessary for the notice to state all of the consequences which may flow from consideration of the topic. *Cox Enters., Inc. v. Board of Trustees*, 706 S.W.2d 956, 958 (Tex. 1986); *see Sokolow v. City of League City*, 37 F.Supp.2d 940, 946–47 (S.D. Tex. 1999). However, when the topic is of special interest to the public, the description must be more detailed, and must provide "reasonable specificity of the subject matter to be considered." *Cox*, 706 S.W.2d at 959. "[A]s public interest in a matter increases, a correspondingly more detailed description of the subject under consideration must be given." *Rettberg v. Tex. Dep't of Health*, 873 S.W.2d 408, 411 (Tex. App.—Austin 2004, no pet.) (citing *Cox*, 706 S.W.2d at 959; *Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 180 (Tex. App.—Corpus Christi 1990, writ denied)).

6

In *Cox*, the Texas Supreme Court found that the word "personnel" was insufficiently specific to notify the public of the selection of a new school district superintendent. 706 S.W.2d at 959. The Court, noting that the "[s]election of a new school superintendent is not in the same category as ordinary personnel matters," found that more specificity was needed in order to provide "full and adequate" notice to the public under TOMA. *Id.*; *see Salazar v. Gallardo*, 57 S.W.3d 629, 633–34 (Tex. App.—Corpus Christi 2001, no pet.); *Point Isabel*, 797 S.W.2d at 179; *see also Rogers v. City of McAllen*, No. 13-07-00278-CV, 2008 Tex. App. LEXIS 6381, at *10 (Tex. App.—Corpus Christi Aug. 21, 2008, no pet.) (mem. op.). Similarly, in *Point Isabel*, we found that a public notice listing "employment of personnel" as a meeting topic was insufficient to advise the public that the hiring of school principals might be considered at the meeting. 797 S.W.2d at 182. However, we also concluded that this language *was* sufficient to advise the public that the positions of "librarian, part-time counselor, band director, and elementary school teacher" would be discussed at the meeting, reasoning that "[t]he record does not disclose public interest in these positions." *Id.* at 183.

Thanedar asserts that his position of CFO was of such "special interest to the public" that DISD was required by TOMA to list the position and Thanedar's name as subjects in the public notice. We disagree. While school principals and superintendents have substantial interaction with the public and shoulder broad policymaking responsibility, CFOs are concerned predominantly with internal school district matters. The duties of a CFO therefore do not involve "broad contact" with the public such that the position requires greater notice specificity than that generally required under TOMA. *See Mayes v. City of De Leon*, 922 S.W.2d 200, 203 (Tex.

7

App.—Eastland, 1996, writ denied) (holding that the job of a police chief was of special interest to the public because of "the broad contact with the public that those duties involve"); *see also Rettberg*, 873 S.W.2d at 412 (holding that the position of executive secretary of the State Board of Examiners of Professional Counselors was not of special interest to the public). We note further that the only evidence Thanedar produced on this issue was the testimony of certain DISD trustees and employees; there was no evidence adduced specifically as to the importance of Thanedar's position to the public at large. Accordingly, we cannot conclude that the position of CFO was of such special interest to the public that a more specific notice was required.

The trial court's directed verdict as to Thanedar's TOMA claims was proper because Thanedar failed to produce evidence sufficient to raise an issue of fact on those claims.[1] *See Koepke*, 84 S.W.3d at 395. Further, because Thanedar did not prevail on those claims, he was not entitled to fees or costs under TOMA. *See* TEX. GOV'T CODE ANN. § 551.142 (providing that the trial court "may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails in an action" for injunctive relief under TOMA). We overrule Thanedar's second and third issues.[2]

---

[1] Thanedar does not challenge the trial court's directed verdicts on his constitutional due process and breach of contract claims.

[2] Also by his second issue, Thanedar asserts that: (1) the trial court "erred in disregarding DISD's willful and egregious violations of the certified agenda provisions of TOMA"; and (2) he was never actually suspended or terminated because the April 18, 2006 board meeting was not "legally convened" and the "individual action of a board member" is irrelevant.

First, Thanedar did not, in his live pleading or at trial, raise the issue of DISD's alleged non-compliance with the certified agenda provisions of TOMA. *See* TEX. GOV'T CODE ANN. § 551.103 (West 2004) (providing that "[a] governmental body shall either keep a certified agenda or make a tape recording of the proceedings of each closed meeting . . ."). Accordingly, we do not entertain that argument. *See* TEX. R. APP. P. 47.1 (requiring us to address "every issue raised and necessary to final disposition of the appeal").

8

## C. Motion to Strike Affirmative Defense of After-Acquired Evidence

Thanedar argues by his fourth issue that "DISD was required to but failed to timely and specifically and sufficiently raise, and plead the affirmative defense of alleged after acquired evidence." He asserts that the trial court therefore erred in denying his motion to strike that affirmative defense, raised by DISD in its sixth amended answer to Thanedar's suit.[3]

The after-acquired evidence doctrine acts as a limitation on an employee's recovery for a retaliatory discharge claim. *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 312 (Tex. 1997). Under the doctrine, "[i]f an employer establishes that an employee's misconduct was so severe that the employee would have been legitimately discharged solely on that basis, after-acquired evidence of the employee's misconduct bars reinstatement and recovery of actual damages for the period after the employer

---

Second, in claiming that he was "never actually suspended or terminated," Thanedar appears to argue that the district superintendent unilaterally ordered his dismissal without authority given by the board of trustees. However, the record reveals that those decisions were in fact taken by the board as a whole. Further, a DISD policy document entitled "DCD (Local)", introduced at trial as Plaintiff's Exhibit 24, reflects that the board of trustees delegated to the superintendent the authority to dismiss "noncertified professionals, paraprofessionals, and auxiliary employees," which (the parties appear to agree) includes the district's CFO. Thanedar baldly asserts on appeal that "[t]he purported policy DCD (Local) . . . is false and fabricated as it was never adopted by the Board." However, Thanedar did not challenge the authenticity of the "DCD (Local)" policy document at trial—indeed, he was the party that sought its admittance as evidence. *See* TEX. R. APP. P. 33.1(a)(1). Moreover, Thanedar does not support his claim that the document is false or fabricated with any legal argument, record references, or citations to authority. *See* TEX. R. APP. P. 38.1(i). We do not find these arguments persuasive.

[3] Thanedar also asserts by his fourth issue that the trial court erred in denying his motion to strike DISD's seventh amended answer, which he claims was filed only two business days before trial. We note that, according to the record, DISD's seventh amended answer was filed on July 20, 2009, some eight days before voir dire took place on July 28, 2009. *See* TEX. R. CIV. P. 63 (providing that a party must obtain leave of court in order to file pleadings within seven days of trial). Nevertheless, because Thanedar does not support this argument with citations to authority, we consider it waived. *See* TEX. R. APP. P. 38.1(i).

9

discovered the grounds for termination." *Id.* (finding that doctrine applies to retaliation actions brought under the Texas Workers' Compensation Act).[4]

Here, DISD asserted that complaints regarding Thanedar's job performance were sufficient, alone, to justify his dismissal. However, DISD's live pleading merely stated that "Defendant would specifically invoke the after acquired evidence doctrine" and did not specify what evidence DISD would rely on as a basis for this defense. Thanedar argues on appeal that DISD therefore failed to adequately plead the defense. He claims that a defendant "must do more than just state that it has some vague after acquired evidence defense, but must show and generate the defense specifically."

We need not determine whether the defense was adequately pleaded because Thanedar cannot show he was harmed by the alleged error. *See* Tex. R. App. P. 44.1(a) (stating that error in a civil case is reversible only if it (1) probably caused the rendition of an improper judgment, or (2) probably prevented appellant from properly presenting the case on appeal). The jury was instructed not to address DISD's after-acquired evidence defense if it found no liability on Thanedar's Whistleblower Act claim. The jury found no liability and, in accordance with the instructions, did not consider any affirmative defense. Thanedar therefore has not shown that the trial court's error, if any, in denying his motion to strike was reversible. *See id.* His fourth issue is overruled.

---

[4] The after-acquired evidence doctrine differs from the defense set forth in subsection 554.004(b) of the Whistleblower Act in that the former acts only as a limitation on recoverable damages, whereas the latter serves as a complete bar to recovery. *See* Tex. Gov't Code Ann. § 554.004(b) (West 2004) ("It is an affirmative defense to a suit under this chapter that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter of a violation of law."); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 312 (Tex. 1997).

**D.    Failure to Rule on Motions Before Trial**

By his fifth issue, Thanedar argues that the trial court erred by "repeatedly failing to rule on more than 19 motions (12 of Thanedar and 7 from DISD) that had accumulated in 3 1/2 years before the beginning of jury trial, causing a great deal of harm to Thanedar . . . ." Thanedar does not, in his brief, set forth the standard of review applicable to a trial court's alleged failure to rule on motions, nor does he set forth the standard of review applicable to the motions themselves. He does not explain what he requested in the motions, whether he called them to the trial court's attention, whether the trial court carried the motions with the trial, or how he was harmed by the trial court's failure to rule before trial.[5] Under these circumstances, nothing has been presented for our review. *See* TEX. R. APP. P. 33.1(a); TEX. R. APP. P. 38.1(i) (requiring a "clear and concise argument for the contentions made, with appropriate citations to authority and to the record"). We overrule Thanedar's fifth issue.

**E.    Jury Charge**

Thanedar complains by his sixth issue that the trial court's jury charge was defective. Specifically, he argues that:  (1) question number one is "impermissibly vague and misleading"; (2) question number two "unjustly assumes misconduct on Thanedar's part and wrongfully fails to specify any misconduct and fails to provide instructions"; and (3) the instructions given were defective and inadequate.

---

[5] Thanedar also argues by this issue that DISD's trial counsel "engaged [in] ethnic baiting of [the] jury creating incurable jury taint and engaged in improper jury argument." He specifically complains of defense counsel's offhand comments that Thanedar "is not from the [Rio Grande V]alley" and that counsel's nickname is "Cantinflas." He also accuses the jury of misconduct, noting that he "interviewed" the jury foreman shortly after the verdict was rendered, and that during this interview (which is absent from the record), the foreman stated that "there wasn't enough time" to look into reasons for Thanedar's discharge. These ancillary arguments, like the central argument of issue five, are not supported by citations to authority and are therefore waived. *See* TEX. R. APP. P. 38.1(i).

11

The trial court must submit instructions and definitions to the jury as are necessary to enable the jury to render a verdict. TEX. R. CIV. P. 277. The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). Failure to submit a question is not deemed grounds for reversing the judgment unless its submission, in substantially correct wording, has been requested in writing by the party complaining of the judgment. TEX. R. CIV. P. 278. We review charge complaints for abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). A clear failure to analyze or apply the law correctly will constitute such an abuse. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). We will reverse only where the error in the jury charge is shown to have probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* TEX. R. APP. P. 44.1(a).[6]

Jury question number one asked: "Was [Thanedar]'s report of violations of law made in good faith and a cause of [DISD]'s terminating or suspending [Thanedar] . . . ?" In his proposed jury charge, Thanedar submitted the following corresponding question: "Do you find by a preponderance of the evidence that Mr. Thanedar reported a violation of law in good faith to an appropriate law enforcement agency which caused solely or in part the defendant to take an adverse personnel action against Mr. Thanedar?"

---

[6] In defense of the court's charge, DISD repeatedly refers to the fact that the questions included therein track those set forth in the State Bar of Texas Pattern Jury Charges. *See* STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES, 107.4 & 107.7 (1997 ed.). However, although the Pattern Jury Charges are "heavily relied upon by both the bench and bar," *Alamo Lumber Co. v. Pena*, 972 S.W.2d 800, 808 (Tex. App.—Corpus Christi 1998, pet. denied), they "are not law." *H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 37 (Tex. 1998). Without regard to the Pattern Jury Charges, the trial court was still under an obligation to submit issues "logically, simply, clearly, fairly, correctly, and completely." *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999).

12

Thanedar argues that the trial court's question number one was (1) "impermissibly vague" because it did not specify which "report" it was referring to,[7] and (2) erroneous because it did not ask whether Thanedar made a report to an "appropriate law enforcement agency." We disagree. Thanedar does not point to any authority, and we find none, requiring that the jury question specify which report allegedly caused the adverse personnel action. Moreover, the evidence at trial was uncontroverted that Thanedar made reports to at least one "appropriate law enforcement agency" and the jury charge defined that term properly as set forth in the statute. *See* TEX. GOV'T CODE ANN. § 554.002(b) (stating that an "appropriate law enforcement authority" is "a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law"). The trial court did not err by submitting question number one.

Question number two asked: "Did [Thanedar] engage in misconduct for which [DISD] would have legitimately discharged him solely on that basis?" The jury was instructed to answer this question only if it answered "Yes" to question number one. Thanedar argues that this question improperly assumes that DISD's defense under section 554.004(b) of the Whistleblower Act is based on evidence of "misconduct," whereas the statute allows the defense to be based on any "information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter." TEX. GOV'T CODE ANN. § 554.004(b). Even assuming that submission of this question was incorrect, we find no reversible error. As noted, the jury, as

---

[7] According to Thanedar's testimony, he made separate reports to, among others, the Texas Education Agency, the Federal Bureau of Investigation, DISD Police, the Federal Communications Commission, and the United States Department of Justice.

13

instructed, did not consider question number two because it did not find liability under question number one. Therefore, Thanedar cannot show he was harmed by any error. *See* TEX. R. APP. P. 44.1(a).

Finally, Thanedar argues that the instructions given to the jury were defective. Specifically, the charge instructed the jury that Thanedar "has the burden to prove each element of his claim by a preponderance of the evidence." A separate section of the charge, entitled "Plaintiff's Burden of Proof Under the Texas Whistleblower Act," stated as follows:

> You are instructed that under the "Texas Whistleblower Act" the Plaintiff, [Thanedar], has the burden to prove by a preponderance of the evidence that [DISD] suspended him after he, in good faith, reported a violation of law to an appropriate law enforcement authority and that the suspension would not have occurred when it did, absent Plaintiff's report.

The actual text of the Whistleblower Act, on the other hand, states as follows:

> A public employee who sues under this chapter has the burden of proof, *except that if the suspension or termination of, or adverse personnel action against, a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the suspension, termination, or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report.*

TEX. GOV'T CODE ANN. § 554.004(a) (emphasis added).

The instructions given as part of the jury charge were erroneous in two ways. First, the charge neglects to advise the jury of the rebuttable presumption provided in section 554.004(a), which is indisputably applicable in the instant case. *See id.* Second, the charge is incorrect when it states that Thanedar bore the burden to prove "that the suspension would not have occurred when it did, absent Plaintiff's report." In fact, the existence of an alternate justification for a plaintiff's suspension or dismissal is an affirmative defense for which the defendant bears the burden of proof, not an

14

element of the tort for which the plaintiff would bear the burden. *See id.* § 554.004(b) ("It is an affirmative defense to a suit under this chapter that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter of a violation of law.").

The trial court abused its discretion in submitting this instruction in the jury charge. Moreover, Thanedar preserved the error by submitting substantially correct versions of the questions and instructions in his proposed jury charge. *See* TEX. R. CIV. P. 278. However, we find that the errors we have identified are not grounds for reversal because the errors did not cause Thanedar to suffer harm. As detailed further *infra*, DISD produced evidence indicating that the board of trustees had significant legitimate concerns regarding Thanedar's job performance. Accordingly, even if the jury had been properly instructed as to the statutory presumption, the jury could have reasonably concluded that the presumption had been effectively rebutted, thereby shifting the burden again to Thanedar to show causation. We cannot say, therefore, that the charge errors probably caused the rendition of an improper verdict or prevented Thanedar from preventing his case on appeal. *See* TEX. R. APP. P. 44.1. Thanedar's sixth issue is overruled.

## F.    Evidence Supporting Rejection of Whistleblower Claim

By his seventh issue, Thanedar claims that no evidence supported the jury's finding that DISD did not unlawfully retaliate against him under the Whistleblower Act.

15

We construe this argument as a challenge to the legal sufficiency of the evidence supporting the jury's verdict.

In general, evidence will be considered legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). However, when a party attacks the legal sufficiency of an adverse finding on an issue upon which it had the burden of proof, that party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We review the evidence in the light most favorable to the verdict, crediting evidence that supports the verdict if reasonable jurors could and disregarding all contrary evidence that a reasonable jury could have disbelieved. *City of Keller*, 168 S.W.3d at 822.

The Whistleblower Act states that

> [a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

TEX. GOV'T CODE ANN. § 554.002(a). A public employee whose employment is suspended or terminated in violation of the statute may sue to obtain (1) reinstatement to the employee's former position or an equivalent position, (2) compensation for wages lost during the period of suspension or termination, and (3) reinstatement of fringe benefits and seniority rights. *Id.* § 554.003(b).

The following elements are required to establish a claim under the Whistleblower Act: (1) the plaintiff is a public employee; (2) the report was made in good faith; (3) the

16

report involved a violation of law; (4) the report was made to an appropriate law enforcement authority; and (5) the plaintiff suffered retaliation as a result of making the report. *Bexar County v. Lopez*, 94 S.W.3d 711, 714 (Tex. App.—San Antonio 2002, no pet.) (citing TEX. GOV'T CODE ANN. § 554.002(a)). A "good faith" report means that the plaintiff must have believed he was reporting conduct that constituted a violation of law and his belief must have been reasonable based on his training and experience. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 626 (Tex. 2010); *see Wichita County v. Hart*, 917 S.W.2d 779, 785 (Tex. 1996) (noting that those with law enforcement training have "far more exposure and experience in determining whether an action violates the law," and thus, the reasonableness of their belief that a law has been violated will be examined more closely than will the beliefs of non-law enforcement employees).

We first address the causation element of retaliation. Pointing to Thanedar's failure to disclose to the board that he was not licensed as a CPA, his refusal to pay the Stainke Elementary School contractor, and other job performance-related complaints, DISD argues that Thanedar "did not prove that [DISD] took the action [it] did as a result of [Thanedar] making a report to them."[8] We note that Thanedar did not bear the exclusive burden at trial to establish the causation element. As noted, section 554.004(a) of the Whistleblower Act states that, if a suspension or termination is imposed within ninety days of the report to law enforcement, a rebuttable presumption arises that the suspension or termination was imposed because of that report. TEX.

---

[8] This is a misstatement of the applicable law. A Whistleblower Act plaintiff need not show that he made a report of illegal activity *to the entity that ordered the adverse employment action*; rather, the plaintiff must show that a report was made *to law enforcement* and that the adverse employment action was the result of the report having been made. *Bexar County v. Lopez*, 94 S.W.3d 711, 714 (Tex. App.—San Antonio 2002, no pet.) (citing TEX. GOV'T CODE ANN. § 554.002(a)).

GOV'T CODE ANN. § 554.004(a). It is undisputed that Thanedar's suspension and termination occurred within ninety days of his making the reports of wrongdoing.[9] Accordingly, the burden was on DISD to rebut the statutory presumption that the suspension and termination were caused by Thanedar's reports. *See id.* We find that DISD met that burden.

Matthew Jones, a member of the DISD board of trustees at the time of Thanedar's suspension and dismissal, testified that "turmoil" developed in the district's business office during Thanedar's tenure as CFO. He explained further:

> I don't know exactly what Mr. Thanedar was doing or not doing, but I think he was approving every single PO [purchase order] at one point.
>
> And what that was causing was a great delay in numerous, numerous payments that were supposed to be going out. And we had principals that were going crazy because they had students lined up to go on trips and they had people there but there was no—the hotel hadn't been paid for or the trip to Houston or whatever, there was no payment. They couldn't get any POs out.
>
> And we had circumstances where, for example, the athletic department had purchased tractors to keep the fields cut and everything, and those were being threatened to be repossessed because no payments had been made.
>
> So we had a huge disagreement about what needed to be done to make—basically we were just way behind on a bunch of payments and people were not getting things done that needed to be done, and Mr. Thanedar was holding all the payments.

Jones was then asked specifically why he voted to end Thanedar's employment with DISD. He responded:

> A number of issues were all surfacing at the same point, the payroll department and the purchase orders being one. I think probably the one that was the biggest concern to me and that really pushed things over the

_____

[9] As noted, Thanedar disputes the notion that the DISD board of trustees properly exercised its legal authority to suspend or dismiss him. However, he does not dispute that the purported suspension and dismissal occurred within ninety days of his reports to law enforcement.

18

top far and away was our bond issue. Mr. Thanedar . . . made statements to me and to the entire Board that we could go out for our entire bond amount, which I recall being 42 million—and that could be wrong one way or the other.

And the bonds are ones you get to build other schools. And . . . if you're going to do that, then that creates additional tax, so it was going to take seven additional cents [per $100 valuation] to everybody in Donna on their property tax in order to be able to have a 42-million-dollar bond, that's what we were looking at. And as a board, we were not willing to do that. . . .

Mr. Thanedar made the statement to us that we could—there [are] two sets of taxes. There is one that is for your bond elections, and there is another one that we get funded off of just for our general stuff, one basically for buildings and new buildings and one for everything else. . . . One of them used to be capped at 1.50 per hundred. . . . [W]e call that the M&O, maintenance and operations tax. . . . Then you have on top of that an existing . . . tax for those bonds you pass for the old schools you built. And if you want to get new ones and get new money that number is going to go up. . . .

And Mr. Thanedar explained to the board that we could reduce the one that was 1.50 down to 1.43 with very low impact to the district, to the tune of something less than a million dollars, maybe 6 or 700 something thousand dollars. . . . So, . . . one [tax rate] would go up and one would go down and taxpayers would still be paying $1.16 total. Their taxes wouldn't go up. But we would just kind of reallocate it out of the general fund tax and move it over into the building tax. . . . And Mr. Thanedar assured us we could—he could absorb this 6 or $700,000, whatever it was, into the budget and we would go on down the road and no problem.

Well, so upon that information, we went out and voted to . . . go out for a bond in March, and the election is in May. . . .

At some point in time we met with Chuy Ramirez, who was our bond counsel. . . . We had also another party involved in that, is a financial advisor you get. When you're going to sell bonds into the market and throughout the process, you have a financial advisor, which is a third-party, who was an expert. Ours were, I think, out of San Antonio or somewhere called Dain Rauscher.

We asked them if Mr. Thanedar was correct, [i]s he right that we can really go down on the M&O side seven cents without having a huge impact. . . . They said, ["]Hey, we don't know. That sounds wrong to us, but we're not

19

experts in that area. We will try to help you find out. Mr. Thanedar assured us that he was correct.["]

Then at a meeting we had with Mr. Ramirez, . . . Ramirez explained that he completely disagreed with Mr. Thanedar's analysis of the seven-cent issue. And Mr. Thanedar in what I took to be a very offensive and rude way told him that he didn't know anything that he was talking about and that Mr. Thanedar was right. . . . And so after that meeting, we got back involved with Dain Rauscher. They went directly to TEA. And TEA, the guy who writes the proposals, sent us back information saying no, that's not a $700,000 difference. That's a 7 million—6 to 7 million reduction in your funding from the State you're going to get. If you go from $1[.50] to $1.43 on your general fund dollars, you're going to lose 7 million.

And I'll tell you, at that point I lost every bit of confidence in Mr. Thanedar because we were already deep in to the process. He knew—and that would have bankrupted our district in no time at all had we taken that action or we would have just had to raise the tax and had lied to our constituents and to our community. And so that—that was the major factor for me in having no further confidence in Mr. Thanedar and what he said being accurate.

Trustee Juan Gilbert Guerrero testified that, at the April 18, 2006 board meeting, Jones recommended to the board that it terminate Thanedar's employment, Guerrero made a motion to approve the recommendation, the motion was seconded by another trustee, and the board voted unanimously in favor of the motion.

Considering this evidence, we find that reasonable and fair-minded people could have concluded that DISD effectively rebutted the statutorily-mandated presumption. *See id.* § 554.004(a); *City of Keller*, 168 S.W.3d at 823. Further, a reasonable juror could have concluded from this evidence that the DISD board of trustees suspended and terminated Thanedar due to his job performance, and not because of the reports Thanedar made to law enforcement. *See* TEX. GOV'T CODE ANN. § 554.004(b). Because Thanedar failed to establish, as a matter of law, all vital facts in support of his Whistleblower Act claim, *see Dow Chem. Co.*, 46 S.W.3d at 241, the evidence was

20

legally sufficient to support the jury's rejection of that claim.  Thanedar's seventh issue is overruled.

### III. Conclusion

We affirm the trial court's judgment.[10]

DORI CONTRERAS GARZA
Justice

Delivered and filed the
18th day of August, 2011.

---

[10] Thanedar requests in his brief that we impose sanctions on DISD's trial counsel, Eileen Leeds, for "engaging in ethnic baiting of jury and for obstructing justice."  Having reviewed the record, we find Thanedar's issue to be utterly lacking in merit.  We deny his request.