

# NUMBER 13-24-00566-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE CITY OF SAN BENITO, TEXAS
## AND RICARDO GUERRA

## ON PETITION FOR WRIT OF MANDAMUS



# NUMBER 13-24-00579-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MAYOR RICARDO GUERRA
AND CITY OF SAN BENITO,
TEXAS,**                                                                 **Appellants,**

**v.**

**JULIAN RIOS,**                                                         **Appellee.**

---

## ON APPEAL FROM THE 197TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Justices Silva, West, and Fonseca
Memorandum Opinion by Justice Silva[1]**

---

[1] *See* Tᴇx. R. Aᴘᴘ. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not

By petition for writ of mandamus filed in cause number 13-24-00566-CV and by notice of appeal filed in cause number 13-24-00579-CV, the City of San Benito (City) and Mayor Ricardo Guerra seek to set aside trial court orders[2] that restrain them "from adopting [or] confirming any results from the November 5, 2024 election relating to the propositions and/or charter amendments identified in Order Number 2024-0806-001" and rendering void "all votes strictly from the November 5, 2024 election relating to the propositions and/or charter amendments identified in Order Number 2024-0806-001." We address both causes in a single opinion in the interests of judicial economy and efficiency. In cause number 13-24-00579-CV, we reverse and remand, and in cause number 13-24-00566-CV, we dismiss.

## I. BACKGROUND

On August 2, 2024, the City posted a notice for a regularly scheduled meeting of the City Commission to be held on August 6, 2024. The notice included eight "**CONSENT AGENDA ITEM(S)**," which were "considered to be routine," would "be approved by one motion," and for which "[t]here [would] be no separate discussion." One of these items was identified as, "Consideration and possible action to approve Order Number 2024-0806-001, for the City of San Benito November 5, 2024, Charter Amendment Special Election." At the meeting, the City Commission approved Order Number 2024-0806-001,

---

required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding and appeal arise from trial court cause number 2024-DCL-06091 in the 197th Judicial District Court of Cameron County, Texas, and the respondent is the Honorable Michael V. Garcia, sitting by assignment. *See id.* R. 52.2.

which provided for an election to be held on November 5, 2024, for the purpose of voting on the following five proposed amendments to the San Benito City Charter:

**Proposition A**

Amendments to the City of San Benito Charter for consistency with state law.

**Proposition B**

An amendment to the City of San Benito Charter requiring all members of the City Commission to reside within the City limits during their term of office.

**Proposition C**

An amendment to the City of San Benito Charter authorizing the City Commission to make appointments to the City Commission in the case of a vacancy where there is less than 365 days remaining in the vacant term.

**Proposition D**

An amendment to the City of San Benito Charter to allow the City Manager to reside outside the city limits.

**Proposition E**

An amendment to the City of San Benito Charter to provide for process and reasons for removal of municipal judges.

On October 17, 2024, Julian Rios, a registered voter residing in San Benito, filed a lawsuit against the City and Guerra alleging that they "violated the Texas Open Meetings Act [(TOMA)] by failing to provide the public with proper notice of the vote on and substance of Order Number 2024-0806-001." Rios thus asserted that Order Number 2024-0806-001, the propositions, the charter amendments, and any votes cast regarding the propositions were void. Rios sought declaratory relief and injunctive relief. The trial

4

court thereafter issued two restraining orders which are not at issue in these proceedings.[3]

Early voting began in the election on October 21, 2024. The ballot for Cameron County included the foregoing propositions regarding amending the City Charter.

On October 28, 2024, the trial court held an evidentiary hearing on Rios's requests for relief but did not issue an immediate ruling. The last day of early voting was November 1, 2024. On November 4, 2024, the trial court issued a letter ruling which states in its entirety:

> On October 28, 2024, a Hearing was held in this case. The Court makes the following rulings:
>
> 1. The Court restrains the Defendants from adopting or confirming any results from the November 5, 2024 election relating to the propositions and/or charter amendments identified in Order Number 2024-0806-001; and
>
> 2. The Court voids all votes strictly from the November 5, 2024 election relating to the propositions and/or charter amendments identified in Order Number 2024-0806-001.
>
> I am directing Plaintiff['s] counsel to prepare the Court's order in accordance with the above ruling(s), submit said order to opposing counsel for approval as to form only, and to forward same to the Court for signature and entry. If parties cannot reach an agreement as to the form of the Court's order, each party may submit a proposed order for the Court's consideration.

The following day, at the general election held on November 5, 2024, voters passed four of the five propositions regarding amendments to the City Charter. Specifically, voters

---

[3] The temporary restraining orders are not at issue in the appeal or original proceeding. *See, e.g.*, *In re Salgado*, 53 S.W.3d 752, 757 (Tex. App.—El Paso 2001, orig. proceeding) ("Ordinarily, the expiration of an order granting injunctive or protective relief would render the issue moot."); *Hermann Hosp. v. Tran*, 730 S.W.2d 56, 57 (Tex. App.—Houston [14th Dist.] 1987, no writ) (stating that a temporary restraining order which expired by its own terms was rendered moot).

5

passed Propositions A, B, C, and E, but they did not pass Proposition D, which would have allowed the city manager to reside outside the city limits.

On December 23, 2024, the trial court issued a detailed temporary injunction order which reiterated and expanded its letter ruling of November 4, 2024, and again enjoined the City and Guerra from "adopting [or] confirming" the election results regarding the propositions and "VOIDS all votes" made on November 5, 2024, regarding the propositions.[4]

The City and Guerra assail the November 4, 2024 order by petition for writ of mandamus, and both the November 4, 2024 and the December 23, 2024 orders by appeal. The Court requested and received a response to the petition for writ of mandamus from Rios.

## II.     TEMPORARY INJUNCTIONS

"The function of a preliminary injunction is to maintain the status quo rather than adjudicate the matter on the merits." *In re M-I L.L.C.*, 505 S.W.3d 569, 576 (Tex. 2016) (orig. proceeding); *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) ("A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits."). "An injunction can restrain a party from a course of conduct that is otherwise within its legal rights to pursue, or it can mandate action and force a party to engage in a course of conduct it may otherwise choose not to pursue."

---

[4] When the trial court modifies a temporary injunction during the appeal of the original order, the appellate court has jurisdiction to review the modified order when it concerns the same subject matter as the original order. *See* TEX. R. APP. P. 29.5, 29.6(a)(1).

6

*Harley Channelview Props., LLC v. Harley Marine Gulf, LLC*, 690 S.W.3d 32, 37 (Tex. 2024).

Generally, a temporary injunction is an "extraordinary remedy" and accordingly, it "does not issue as a matter of right." *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam)). To obtain a temporary injunction, an applicant must "plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Abbott v. Harris County*, 672 S.W.3d 1, 8 (Tex. 2023) (quoting *Butnaru*, 84 S.W.3d at 204). If any one of these required showings is lacking, the injunction should be reversed on appeal. *Id.* We review an order granting a temporary injunction for an abuse of discretion. *Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d at 916; *Walling*, 863 S.W.2d at 58.

### III.    APPEAL IN CAUSE NO. 13-24-00579-CV

The City and Guerra (appellants) present seven issues asserting that the trial court abused its discretion in granting injunctive relief because: (1) the TOMA claim and injunctive relief claim under it were not ripe; (2) Rios failed to establish a probable right to recovery for the TOMA claim and failed to establish irreparable harm; (3) the TOMA claim is moot; (4) the orders improperly interfered with an election; (5) the orders create an undue hardship; (6) the injunctive relief exceeds the status quo; and (7) the trial court granted affirmative relief in the absence of a showing that the injunction was necessary to prevent irreparable injury or extreme hardship.

7

## A.  Rios's Objection

Appellants included thirteen separate items in the appendix to their appellate brief. Rios filed an objection to appellants' appendix items J, K, and L on grounds that they were "outside of this Court's record." Appendix J is a printed calendar from Cameron County's website including relevant dates for the November 5, 2024 election. Appendix K is a "Summary Results Report," certified by an election official, providing unofficial results regarding that election. Appendix L is a printed news item from KRGV news regarding the election, entitled "'My vote didn't count:' San Benito residents react to ruling that voids charter change election," dated November 6, 2024.

"The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record." TEX. R. APP. P. 34.1. Documents that are not included in the appellate record are not properly before the Court. *Hall v. Green Ridge Townhouse Homeowners Ass'n, Inc.*, 635 S.W.3d 697, 701 (Tex. App.—Texarkana 2021, pet. denied). "The attachment of additional documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, therefore, the documents cannot be considered." *Fibela v. Wood*, 657 S.W.3d 664, 672 (Tex. App.—El Paso 2022, no pet.); *see Hudson v. Aceves*, 516 S.W.3d 529, 539 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (combined app. & orig. proceeding); *Jackson v. Citibank (S. D.), N.A.*, 345 S.W.3d 214, 214 (Tex. App.—Dallas 2011, no pet.). In original proceedings, we similarly "must focus on the record that was before the court" when it made its decision. *See In re Bristol-Myers Squibb Co.*, 975 S.W.2d 601, 605 (Tex. 1998) (orig. proceeding); *Sabine OffShore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (orig. proceeding) (per curiam);

8

*In re Taylor*, 113 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding).

Accordingly, we agree with Rios's general proposition that we should not consider items outside of the appellate record. However, an appellate court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(a), (b); *see City of El Paso v. Fox*, 458 S.W.3d 66, 71 (Tex. App.—El Paso 2014, no pet.) (discussing adjudicative facts that are generally known as "notorious facts" and adjudicative facts that can be accurately determined as "verifiably certain facts"). We may take judicial notice of a wide variety of adjudicative facts. *See, e.g.*, *Cervenka v. Cervenka*, 672 S.W.3d 814, 820 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.) (taking judicial notice of the 2022 Tax Charts used by the Office of the Attorney General); *County of El Paso v. Navar*, 584 S.W.3d 73, 77–78 (Tex. App.—El Paso 2018, no pet.) (taking judicial notice of a special warranty deed, a declaratory judgment, and a register of actions); *In re Estate of Hemsley*, 460 S.W.3d 629, 638 (Tex. App.—El Paso 2014, pet. denied) (taking judicial notice of a newspaper publication and televised news reports indicating where an individual had been buried); *City of El Paso*, 458 S.W.3d at 72 (sua sponte taking judicial notice of the minutes from a city council meeting); *Lazarides v. Farris*, 367 S.W.3d 788, 799 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (taking judicial notice that the minutes of a city council meeting were available on the city's website); *City of Houston v. Todd*, 41 S.W.3d 289, 301 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (taking judicial notice of the circumstances under which statutes were enacted, including

9

historical matters regarding transportation, industrial plants, automobiles, electricity, and oil pipelines); *Langdale v. Villamil*, 813 S.W.2d 187, 190 (Tex. App.—Houston [14th Dist.] 1991, no writ) (taking judicial notice of a judgment of disbarment because it was "a matter of public record").

Further, we apply the doctrine of judicial notice in the context of cases concerning the election process. *See Sterling v. Ferguson*, 53 S.W.2d 753, 761 (Tex. 1932) (orig. proceeding) (per curiam) (taking judicial notice of election statutes and of the dates of the election); *In re Peacock*, 421 S.W.3d 913, 915 n.1 (Tex. App.—Tyler 2014, orig. proceeding) ("We take judicial notice that early voting by appearance begins on February 18, the primary election is on March 4, and the general election is on November 4, 2014."); *Greenberg, Benson, Fisk & Fielder, P.C. v. Howell*, 685 S.W.2d 694, 695 (Tex. App.— Dallas 1984, no writ) ("We take judicial notice that the election referred to will take place on November 6, 1984.").

The items at issue concern adjudicative facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* TEX. R. EVID. 201(a), (b); *City of El Paso*, 458 S.W.3d at 71. Accordingly, we overrule Rios's objection to these items.

## B.  Probable Right to Recovery

In their second issue, which we take out of order, appellants assert that Rios failed to establish a probable right to recovery for his TOMA claim and further failed to establish irreparable harm. As stated previously, Rios alleged that appellants violated TOMA by failing to provide the public with proper notice of the vote on and substance of Order

Number 2024-0806-001. However, appellants contend that "TOMA was not violated with respect to the August 6 posted City Commission meeting agenda and subsequent City Commission vote on the Order for the charter amendments election."

## 1. TOMA

The purposes of TOMA "are to enable public access to and to increase public knowledge of government decision[-]making," and "to provide 'openness at every stage of [a governmental body's] deliberations.'" *City of San Antonio v. Fourth Ct. of Apps.*, 820 S.W.2d 762, 765 (Tex. 1991) (orig. proceeding) (quoting *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex.1990)); *see Tex. State Bd. of Pub. Accountancy v. Bass*, 366 S.W.3d 751, 759 (Tex. App.—Austin 2012, no pet.). Thus, TOMA requires that "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." TEX. GOV'T CODE ANN. § 551.002. Further, "[a] governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." *Id.* § 551.041. "An action taken by a governmental body in violation of [TOMA] is voidable." *Id.* § 551.141; *see City of Plano v. Hatch*, 584 S.W.3d 891, 899 (Tex. App.—Dallas 2019, no pet.). "An interested person, including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of [TOMA] by members of a governmental body." TEX. GOV'T CODE ANN. § 551.142(a); *see State ex rel. Durden v. Shahan*, 658 S.W.3d 300, 303–04 (Tex. 2022) (per curiam). When the contents of a notice are undisputed, then its adequacy is a question of law. *Burks v. Yarbrough*, 157 S.W.3d 876, 883 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Weatherford v. City of San*

*Marcos*, 157 S.W.3d 473, 486 (Tex. App.—Austin 2004, pet. denied). We briefly review the seminal cases issued by the supreme court on the sufficiency of notices under TOMA.

### a. *Lower Colorado River Authority*

In this case, decided in 1975, the City filed suit against the Lower Colorado River Authority alleging, in part, that its board of directors failed to comply with TOMA. *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 642 (Tex. 1975). The supreme court stated that the board's "first effort to increase rates was made at a meeting of the Board of Directors on October 19, 1972," yet "[t]he notice of that meeting made no reference to rates," thus it concluded that the action taken at that meeting regarding rates was invalid. *Id.* at 646. The court then considered the efficacy of a notice regarding a meeting held on May 24, 1973, which stated that the board would consider matters "including the ratification of the prior action of the Board taken on October 19, 1972, in response (sic) to changes in electric power rates for electric power sold within the boundaries of the City of San Marcos, Texas." *Id.* (alteration in original). The court concluded that this notice "is not as clear as it might be, but it would alert a reader to the fact that some action would be considered with respect to charges for electric power sold in San Marcos," therefore, "the notice was sufficient to comply with the statute." *Id.*

### b. *Texas Turnpike Authority*

The supreme court again addressed the sufficiency of notice required under TOMA in 1977 in a case concerning whether a turnpike should be turned over to the state and operated toll-free or whether funds should be expended on a possible expansion of the turnpike. *Tex. Tpk. Auth. v. City of Fort Worth*, 554 S.W.2d 675, 676 (Tex. 1977). The

board of directors of the turnpike authority issued a meeting notice which provided that the board would: "Consider request of County of Dallas, City of Grand Prairie, Dallas Central Highway Committee, Dallas Chamber of Commerce, and Grand Prairie Chamber of Commerce to determine feasibility of a bond issue to expand and enlarge the Dallas-Fort Worth Turnpike . . . ." *Id*. The City alleged that "since prior resolutions of the Turnpike Authority had declared the intention of the Authority to transfer the Turnpike as a free road under State Highway operation as soon as the existing bonds were paid, it was necessary that the notice specifically state that consideration would be given to the study of a course of action at variance with prior declaration of intention." *Id.* The supreme court rejected this proposition and held that the notice complied with the statute. *Id.* "There is no necessity to post copies of proposed resolutions or to state all of the consequences which may necessarily flow from the consideration of the subject stated." *Id.*

### c.    *Cox Enterprises, Inc.*

In *Cox Enterprises*, the board of trustees of a school district posted notices of their closed executive sessions that listed only "such generalized topics as 'Personnel,' 'Litigation,' 'Consultation,' and 'Real Estate Matters.'" *Cox Enters., Inc. v. Bd. of Trustees of Austin Indep. Sch. Dist.*, 706 S.W.2d 956, 957 (Tex. 1986). The supreme court concluded that the "advance notice given under [TOMA] should specifically disclose the subjects to be considered at the upcoming meeting." *Id.* at 959. The court held that the board "did not provide full and adequate notice, particularly where the subject slated for discussion was one of special interest to the public." *Id.* Thus, a label like "personnel" failed as a description of selection of a new school superintendent because it was "not in

13

the same category as ordinary personnel matters," and "litigation" failed as a description of "a major desegregation lawsuit." *Id.* The court noted that it had "held that general notice in certain cases is substantial compliance even though the notice is not as specific as it could be," but "less than full disclosure is not substantial compliance." *Id.* at 959–60. In short, TOMA "requires a full disclosure of the subject matter of the meetings." *Id.* at 960.

### d. *City of San Antonio*

Finally, in *City of San Antonio*, an owner of mineral interests in land challenged the City's condemnation of his land on the ground that the city's notice of the proposed condemnation did not describe the specific land that would be condemned. 820 S.W.2d at 763–64. The notice posted in advance of the city council meeting stated that the City would address "[a]n ordinance determining the necessity for and authorizing the condemnation of certain property in County Blocks 4180, 4181, 4188, and 4297 in Southwest Bexar County for the construction of the Applewhite Water Supply Project." *Id*. The owner of the mineral interests asserted that this notice did not comply with TOMA because it did not describe the condemnation ordinance and the land to be condemned by that ordinance in sufficient detail. *Id.* After reviewing its rulings in *Lower Colorado*, *Texas Turnpike*, and *Cox*, the court held:

> Our decisions in the above cases were clearly based on our understanding of the purposes of the Open Meetings Act, which are to enable public access to and to increase public knowledge of government decision[- ]making. The Open Meetings Act is not a legislative scheme for service of process; it has no due process implications. Rather, its purpose is to provide "openness at every stage of [a governmental body's] deliberations." In reviewing notices under the Act, therefore, we must ensure that these core purposes are served. However, we need not go further and inquire into whether a notice was tailored to reach those specific individuals whose private interests are most likely to be affected by the

14

proposed government action, as Vamarie would have us do. The intended beneficiaries of the Act are not individual citizens, such as the particular landowners affected by this condemnation, but members of the interested public. If a "reader" is given notice, the requirement of the Act is satisfied and its purpose served.

In the present case, we hold that the City's notice as to the subject matter of the ordinance was sufficient to ensure that a reader was given adequate notice of the proposed governmental action. The notice informed readers (1) that the City Council would be considering a condemnation ordinance, (2) that the land subject to condemnation was located in four county blocks in southwest Bexar County, and (3) that the purpose of the proposed action was to construct the Applewhite Water Supply Project. Any readers interested in that project had more than sufficient notice that the City Council would be considering action relating to it. And readers who did own property in those blocks were on notice of some risk that their land might be condemned. That is all the Act requires.

*Id.* at 765–66 (internal citation omitted). The court further noted that the agenda for the city's meeting contained fifty-five items, and "[t]he level of detail required to give all citizens directly affected by the 55 proposed City actions specific notice as to the impact on them individually would be staggering," and "[f]ar from serving the purposes of the Act, this degree of specificity would so overwhelm readers that it would prove even less informative than the current notice." *Id.* at 766.

**2.    Analysis**

We examine the sufficiency of appellants' notice under the foregoing standards. The notice at issue stated that the City Commission would address "Consideration and possible action to approve Order Number 2024-0806-001, for the City of San Benito November 5, 2024, Charter Amendment Special Election." We determine if the notice informs the reader that "some action" will be considered regarding "the topic for consideration." *Cox Enters., Inc.*, 706 S.W.2d at 958; *Lower Colo. River Auth.*, 523 S.W.2d

15

at 646; *see Terrell v. Pampa Indep. Sch. Dist.*, 572 S.W.3d 294, 298 (Tex. App.—Amarillo 2019, pet. denied); *City of Donna v. Ramirez*, 548 S.W.3d 26, 35 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied). In doing so, we require a heightened standard for the notice regarding the subject slated for discussion because a charter amendment represents one of "special interest to the public." *Cox Enters., Inc.*, 706 S.W.2d at 959; *see City of Donna*, 548 S.W.3d at 35 ("The required specificity of the notice is directly related to the level of public interest in the topic to be discussed and increases as the public's level of interest increases.").

We conclude that the notice adequately informed the public of the subject matter at issue. The notice advised the public that the City Commission would consider and potentially approve a specifically identified order, Order Number 2024-0806-001, and provided the subject matter as regarding the City's "November 5, 2024, Charter Amendment Special Election." Any readers interested in amendments to the City Charter had more than sufficient notice that the City Commission would be considering action relating to it by way of a special election. *See City of San Antonio*, 820 S.W.2d at 766. In this regard, appellants did not have the duty to include a copy of Order Number 2024-0806-001 with their notice. *See Tex. Tpk. Auth.*, 554 S.W.2d at 676. Appellants were not required to provide notice tailored to those specific individuals whose private interests were most likely to be affected by the amendments, such as the members of the City Commission, the City Manager, or the municipal judges. *See City of San Antonio*, 820 S.W.2d at 765; *Tex. State Bd. of Pub. Accountancy*, 366 S.W.3d at 759 ("The intended beneficiaries of the Act are members of the interested public, not individual citizens.").

16

Further, appellants were not required to provide specific details regarding each of the amendments. *City of San Antonio*, 820 S.W.3d at 766; *see Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 889 (Tex. App.—Austin 2010, pet. denied); *Burks v. Yarbrough*, 157 S.W.3d at 883. And finally, the notice provided by appellants was not required to encompass the consequences that may have occurred resulting from action on the order and charter amendments. *See Cox Enters., Inc.*, 706 S.W.2d at 958; *Lugo v. Donna Indep. Sch. Dist. Bd. of Trs.*, 557 S.W.3d 93, 98 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.).

In this appeal, Rios argues that appellants failed to comply with the City Charter itself in providing the required notice because the order at issue failed to contain the full text of the proposed amendment. Rios conflates the requirements under TOMA with the City Charter's provisions. In any event, the City Charter provides for amendment "[b]y Ordinance of the City Commission containing the full text of the proposed amendment and effective upon adoption." City of San Benito, Tex., City Charter, § 9.01(b). Order Number 2024-0806-001, included in the appellate record, expressly includes the text of the five propositions at issue.

We conclude that Rios failed to show a probable right of recovery for his TOMA claim. Accordingly, we sustain appellants' second issue.

## C.  Election Process

In their fourth issue, appellants assert that the trial court abused its discretion by granting a temporary injunction because it improperly interfered with the election. Rios

asserts that this contention "is predicated on a critically incorrect fact." According to Rios, "[t]he election was not stopped, delayed, prevented[,] or otherwise."

### 1.    Applicable Law

"It is well settled that separation of powers and the judiciary's deference to the legislative branch require that judicial power not be invoked to interfere with the elective process." *Blum v. Lanier*, 997 S.W.2d 259, 263 (Tex. 1999); *see In re Anthony*, 642 S.W.3d 588, 589 (Tex. 2022) (orig. proceeding) (per curiam) ("In a mandamus relating to an election proceeding, we must be careful to avoid undue interference with the electoral process and the people's right to self-governance, including their choice of candidates."); *see also In re County of Hidalgo*, 655 S.W.3d 44, 49 (Tex. App.—Corpus Christi–Edinburg 2022, orig. proceeding). Thus, "judicial power cannot be invoked to interfere with the election process once it has begun." *In re County of Hidalgo*, 655 S.W.3d at 49 (quoting *In re Lopez*, 593 S.W.3d 353, 357 (Tex. App.—Tyler 2018, orig. proceeding)). In *Blum*, the supreme court held that although a qualified voter "had no right to enjoin the scheduled election," the trial court had jurisdiction to issue an injunction "forbidding the City's use of a misleading ballot proposition so long as the injunction does not operate to delay or cancel the called election." 997 S.W.2d at 263–64. Thus, "[a]n injunction that delays the election would be improper, but an injunction that facilitates the elective process may be appropriate." *Id.* at 263.

The supreme court has explained that "settled precedents . . . sharply limit judicial authority to intervene in ongoing elections." *In re Khanoyan*, 637 S.W.3d 762, 764 (Tex. 2022) (orig. proceeding). In order "for a court to resolve an election dispute, the court

18

must receive the case early enough to order relief that would not disrupt the larger election." *Id.*; *see Abbott v. Mex. Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 705 (Tex. 2022) (explaining that the concept of judicial restraint described in *Khanoyan* was prudential rather than jurisdictional in nature). The party seeking our intervention naturally bears the burden to demonstrate that the relief it seeks will not cause disruption or confusion on election day. *In re Khanoyan*, 637 S.W.3d at 764–65. In *Khanoyan*, the supreme court considered that the primary election was "already in its early stages" and the period for ballot access had closed, and thus concluded that "even with utmost judicial speed, any relief that we theoretically could provide here would necessarily disrupt the ongoing election process." *Id.* at 766. In denying mandamus relief, the supreme court also considered that it had a "bare" record, and stated that, "[o]rdering the requested relief on the paltry record before this Court would be an irresponsible shot in the dark." *Id.* The court contrasted the case before it with others: "In some circumstances, litigants could present the courts with a clear violation of ministerial duties imposed by law, which—especially if brought early enough to avoid harm to the larger election—could lead to prompt judicial correction." *Id.* at 767.

The supreme court revisited and further elucidated these and like principles in 2023:

> Mandamus relief exists to correct a clear abuse of discretion when no adequate appellate remedy exists. The Election Code expressly grants our Court the authority to "compel the performance of any duty imposed by law in connection with the holding of an election." We may also issue "appropriate injunctive relief" to prevent harm caused by a violation of the Election Code.

19

When asked to employ this authority before an election is held, we must first evaluate whether the exercise of judicial power that interferes in the political process is appropriate. "It is well settled that separation of powers and the judiciary's deference to the legislative branch require that judicial power not be invoked to interfere with the elective process." We have acted in advance of an election to facilitate *placing* issues and candidates before the voters but have not done so to deprive voters of their choice. We also have acted to correct misleading ballot language—if the correction can be made without disturbing the election from going forward.

Historically, however, the Court has not enjoined elections altogether, even elections "called without authority and therefore absolutely void." Though we are not insensitive to the costs associated with a void election, "[i]t is of vastly greater importance that the courts refrain from interfering with the exercise of political functions." In the seventy years since the Legislature endowed the Court with statutory power to address violations of the Election Code, we have not once used it to altogether deprive the voters of an election.

After an election is held, the courts have a far more robust role to play in evaluating the results and the process by which those results were obtained. The Election Code provides remedies for "elections tainted by fraud, illegality or other irregularity." A party may not file such a suit, however, until after the election is held. Reviewing claims after an election permits the parties to fully present them to the trial court, which we review in the ordinary course. "[A]s a prudential matter, the law is typically better served when the lower courts review a legal issue before this Court does." It also minimizes the threat of judicial interference where our jurisdiction to correct the political process is lacking.

*In re Morris*, 663 S.W.3d 589, 593–94 (Tex. 2023) (orig. proceeding) (internal footnotes omitted).

### 2. Analysis

We briefly address the relevant chronology. On August 2, 2024, the City posted its agenda for the meeting. On August 6, 2024, the City Commission met and approved this item. The last day to order a general or special election was Monday, August 19, 2024. *See* Tex. Sec'y of State, *Important Election Dates 2024–2025*,

20

https://www.sos.state.tx.us/elections/voter/important-election-dates.shtml (last visited Mar. 19, 2025). The deadline to mail or email ballots to all federal post card application voters was Saturday, September 21, 2024. *See* TEX. SEC'Y OF STATE, *Election Advisory No. 2024-01*, https://www.sos.state.tx.us/elections/laws/advisory2024-01.shtml (last visited Mar. 19, 2025).

On October 17, 2024, Rios filed suit. On October 18, 2024, the trial court issued a temporary restraining order. On October 22, 2024, the trial court issued another temporary restraining order. On October 25, 2024, early voting began. On October 28, 2024, the trial court held an evidentiary hearing on this matter. On November 1, 2024, early voting ended. On November 4, 2024, the trial court issued a letter ruling that "voids all votes strictly from the November 5, 2024 election relating to the propositions and/or charter amendments identified in Order Number 2024-0806-001," and "restrain[ed] the [appellants] from adopting or confirming any results from the November 5, 2024 election relating to the propositions and/or charter amendments identified in Order Number 2024-0806-001." The general election occurred the following day on November 5, 2024. On December 23, 2024, the trial court signed a temporary injunction which, again voided the votes taken on the proposition and set the case for trial on the merits to occur on April 16, 2025.

Here, the City Commission approved the order on August 6, 2024, yet Rios did not seek judicial relief until October 17, 2024, more than two months later. By this time, ballots had been prepared, printed, and mailed. The trial court issued its two temporary restraining orders thereafter. Early voting began on October 25, 2024, yet the trial court

did not hold an evidentiary hearing on this matter until October 28, 2024, during early voting. The trial court issued its initial letter ruling of November 4, 2024, the day before the general election. And finally, the trial court's temporary injunction was not signed until December 23, 2024, more than a month after the election at issue. Based on this sequence of events, Rios did not seek judicial relief in a timely manner. *See In re Khanoyan*, 637 S.W.3d at 765 ("All parties must move with maximum expedition so that the courts—which also must act quickly when properly called upon—do not themselves contribute to electoral confusion.").

Consequently, the trial court's orders improperly interfered with the elective process, once it had begun, in violation of the doctrine regarding separation of powers and the judiciary's deference to the legislative branch. *See Blum*, 997 S.W.2d at 263. While it is true that the trial court's orders did not delay the election, it cannot be said that its orders providing injunctive relief in any way facilitated the election. *See id.* at 263–64. Issuing orders during the pendency of voting purporting to nullify the votes already made on the propositions and the prospective votes on those propositions inherently resulted in disruption of the election process and caused confusion to voters *See In re Khanoyan*, 637 S.W.3d at 764–65. The trial court's rulings may have depressed voting on the propositions, and certainly deprived those individuals who did cast votes on the propositions of their choice. *See In re Morris*, 663 S.W.3d at 593–94; *In re Khanoyan*, 637 S.W.3d at 764–67. Moreover, the trial court's rulings impaired the City's right to self-governance. *See In re Anthony*, 642 S.W.3d at 589. Accordingly, we conclude that under the circumstances present here, the trial court's orders represented an impermissible

22

exercise of judicial power that interfered in the political process. *See In re Morris*, 663 S.W.3d at 593; *In re Khanoyan*, 637 S.W.3d at 764–67. Therefore, we sustain appellants' fourth issue.

**D.     Summary**

We have sustained appellants' second and fourth issues. Having done so, we need not address appellants' remaining issues. *See* TEX. R. APP. P. 47.4.

## IV.     PETITION FOR WRIT OF MANDAMUS IN 13-24-00566-CV

Having addressed appellants' issues in the appeal, we need not address the contentions raised in their petition for writ of mandamus. We are of the opinion that the petition for writ of mandamus has been rendered moot. *See In re Cont. Freighters, Inc.*, 646 S.W.3d 810, 813 (Tex. 2022) (orig. proceeding) (per curiam); *Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Accordingly, we dismiss the original proceeding as moot.

## V.     CONCLUSION

We conclude that Rios lacks a probable right to relief on the merits of his claims; therefore, the temporary injunction was improper. *See Harris County*, 672 S.W.3d at 21. We further conclude that the trial court's rulings improperly interfered with the election process. *See In re Morris*, 663 S.W.3d at 593–94; *In re Khanoyan*, 637 S.W.3d at 764–67.

In appellate cause number 13-24-00579-CV, we reverse the trial court's temporary injunction, dissolve it, and remand the case to the trial court for further proceedings

23

consistent with this opinion. *See In re Marquart*, 675 S.W.3d 57, 59 (Tex. App.—San Antonio 2023, pet. denied); *City of Corpus Christi v. Maldonado*, 398 S.W.3d 266, 272 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.). We note, in this regard, that a temporary injunction does not address the ultimate issue of liability. *See, e.g., Vaughn v. Intrepid Directional Drilling Specialists, Ltd.*, 288 S.W.3d 931, 937–38 (Tex. App.—Eastland 2009, no pet.). As stated previously, we dismiss the original proceeding filed in 13-24-00566-CV as moot. We likewise dismiss the motion to stay, previously carried with the case, as moot.

CLARISSA SILVA
Justice

Delivered and filed on the
28th day of March, 2025.

24